**In re BRANIFF AIRWAYS, INC., et al., Debtors.**

**BRANIFF AIRWAYS, INC., Plaintiff,**

**v.**

**UNITED AIR LINES, INC., Deutsche Lufthansa Aktiengesellschaft, British Airways, Inc., Trans World Airlines, Inc., Transamerican Airlines, Republic Airlines, Inc., on Their own Behalf and on Behalf of All Others Similarly Situated, Defendants.**

**Bankruptcy No. 482–00369.**

**Adv. No. 482–0626.**

United States Bankruptcy Court, N.D. Texas, Fort Worth Division.

Aug. 29, 1983.

Arnold & Parter, Washington, D.C., for Braniff.

MEMORANDUM OPINION REGARDING MOTION TO COMPEL ARBITRATION

JOHN FLOWERS, Bankruptcy Judge.

The Debtor, Braniff Airways, challenges Defendants' assertions of priority status for their claims under § 507 of the Bankruptcy Code ("Code"), their entitlement to setoff rights, and their claims to be beneficiaries of a trust fund. Two of the Defendants, British Airways Board and Deutsche Lufthansa Aktiengesellschaft, have moved the court to stay the proceedings as to their claims and require the Debtor to submit to binding arbitration pursuant to the provisions of certain agreements between these specific parties and Debtor. The motion for arbitration is denied for three reasons.[1]

---

1. The motion was denied by my earlier Order. This opinion sets forth the reasons for the denial.

First, movants rely on the United States Arbitration Act, 9 U.S.C. § 1 *et seq.* ("Arbitration Act"). Specifically they rely on §§ 3, 4 and 201. Section 3 requires a stay of court proceedings upon issues which are referable to arbitration under certain agreements. Section 4 sets forth a procedure for the United States Courts to compel arbitration. Section 201 is a codification of the *Convention on the Recognition and Enforcement of Foreign Arbitration Awards* ("Convention"). The relevant part of that section is Article II(3) which requires a United States Court when requested by one of the parties to an agreement containing an arbitration provision ". . . to refer the parties to arbitration unless it finds the said agreement is null and void, inoperative or incapable of being performed." In addition to the provisions of the Arbitration Act relied upon by the movants, § 2 limits arbitration provisions to controversies arising out of the contract in which the agreement is contained.

With the enactment of the Bankruptcy Code in 1978, Congress created a comprehensive framework to deal with the specialized area of bankruptcy problems, intending to centralize all disputes concerning such matters in the Bankruptcy Court, and consequently, intended that the arbitration act would not apply to bankruptcy matters. Section 1471 of Title 28 of the United States Code, the jurisdictional statute, gives the bankruptcy court jurisdiction of all bankruptcy matters. See, *Northern Pipeline Construction Co. v. Marathon Pipeline,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). This section grants the bankruptcy court exclusive jurisdiction over a bankruptcy case, and over all of the debtor's property wherever located. It also grants non-exclusive jurisdiction over civil proceedings arising under the Code and arising in or related to the bankruptcy case. Congress provided for removal to the bankruptcy court of any action pending in an-

other court so long as the bankruptcy court has jurisdiction over it. 28 U.S.C. § 1478. The bankruptcy court is given the right to accept or abstain from such removal jurisdiction and its decision is not reviewable on appeal. The automatic stay provisions found in 11 U.S.C. § 362 prohibit the continuance of actions involving the debtor upon the filing of a bankruptcy case. The legislative history of § 362 specifically mentions that arbitration proceedings are stayed. H.R.Rep. No. 595, 95th Cong. 1st Sess. 340 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787. Thus, Congress has enacted comprehensive statutes giving the bankruptcy court exclusive jurisdiction of certain bankruptcy matters, an option to exercise jurisdiction in all remaining matters relating to the bankruptcy case, and has prohibited action elsewhere until such time as the bankruptcy court decides what action to take. The purpose behind this policy is to give the debtor and his creditor body a full, fair, speedy, and unhampered chance for reorganization. I conclude that this congressional policy overrides the provisions of the Arbitration Act, particularly where, as here, the issues will determine which creditors are entitled to share in the debtor's assets and in what priority. *Allegaert v. Perot,* 548 F.2d 432 (2nd Cir.1977); *Johnson v. England,* 356 F.2d 44 (9th Cir. 1966); *AFL–CIO v. Davis,* 313 F.2d 841 (6th Cir.1963).

The courts in the *England* and *Allegaert* cases held that the trustee and creditors respectively had not consented to the contract containing the arbitration clause. The Second Circuit in *Allegaert* specifically reaffirmed the position it took in an earlier case, that the trustee and the bankrupt are distinct legal entities with the trustee being a "new entity . . . with its own rights and duties subject to the supervision of the bankruptcy court", and hence not subject to an arbitration agreement between the Debtor and other parties. *Allegaert, supra,* at 435–36.

See, *Reid v. Covert,* 354 U.S. 1, 18, 77 S.Ct. 1222, 1231, 1 L.Ed.2d 1148 (1957) (when a statute, enacted subsequent to the United State's joining in a treaty, is inconsistent with such treaty, the statute renders the treaty null to the extent they conflict); *In re Goff,* 706 F.2d 574 (5th Cir.1983) (the later enacted Bankruptcy Code supersedes the earlier enacted ERISA policy).

Secondly, none of the four arbitration agreements before this court intended that the particular bankruptcy issues presented here be arbitrated. The arbitration agreements represent the international airlines' attempts to deal with problems arising when passengers utilize more than one airline on a trip ("interlining") and for settling accounts between the member airlines. The agreements involved are (1) The Multilateral Interline Traffic Agreement—Passenger ("IATA Passenger Agreement"); (2) The Multilateral Interline Agreement—Cargo ("IATA Cargo Agreement"); (3) The Miscellaneous Bilateral Service Agreements ("Service Agreements"); (4) The Universal Air Traffic Plan Agreement ("UATP Agreement").

The pertinent portions of each of these agreements provide as follows:

IATA Passenger Agreement

Article IX—Arbitration

Any dispute or claim concerning the scope, meaning, construction or effect of this agreement or arising therefrom shall be referred to and finally settled by arbitration in accordance with the procedures set forth below...

IATA Cargo Agreement

Article VIII—Arbitration

Any dispute or claim concerning the scope, meaning, construction or effect of this agreement or arising therefrom shall be referred to and finally settled by arbi-

tration in accordance with the procedures set forth below...

Service Agreements [2]

Article 9

Arbitration and Jurisdiction 9.1 Unless otherwise agreed, any difference or dispute arising from the interpretation or the implementation of the present agreement or relating to any rights or obligations herein contained shall be referred in accordance with the IATA Arbitration Rules at the time of appeal, said rules being considered part hereof. The decision of such arbitration shall be final and enforceable on the parties hereto.

UATP Agreement

21. Arbitration

(a) Adherence to, and any claim or controversy by or between the parties hereto or any carrier who has applied for participation in this Agreement, or question of interpretation concerning or arising out of this Agreement shall be secured, disposed of, and determined by the Committee acting as a Board of Arbitrators...

The specific terms of the IATA Passenger, IATA Cargo and the Service Agreements limit arbitration to disputes concerning the scope, meaning, construction, effect or implementation of the various agreements. By their terms these three agreements do not contemplate arbitration of the bankruptcy issues raised in this proceeding. The issues concerning the priority status of the claimants arising under § 507 of the Code, the claimants' entitlement to setoff under the terms of § 553 of the Code, and whether the Debtor holds certain funds under a constructive trust theory,[3] are issues relating solely to the claimants' right to receive payment from the debtor's estate, and hence are all issues beyond the scope,

---

**2.** There are various service agreements. This provision, contained in the ground service agreement, is typical of the terms of the various service agreements.

**3.** These agreements do not provide for a contractual trust relationship pursuant to an earlier ruling in this case. See Findings of Fact and Conclusions of Law in adversary number 482–00369 entered on February 1, 1983.

and subject matter of the arbitration agreements.[4]

On its face the UTAP Agreement appears to be factually distinguishable from the other three agreements because it requires arbitration of *any* dispute between the parties. However, such provision must be construed in light of the agreement and, although it provides for arbitration of all disputes, it must be limited to disputes relating to the contract. It is clear that the parties, when entering into a contract providing for settlement of accounts, did not intend to compel arbitration in other dealings unrelated to the settlement of accounts. For example, the sale of assets from one carrier to another would be foreign to the contract and would not be subject to arbitration notwithstanding the provision requiring arbitration of all disputes between the parties. When the contract is read in the light of the parties' intention it is clear that the more inclusive language of the UTAP Agreement was not intended to include arbitration of the particular bankruptcy issues which are before this court.

Finally, from a practical standpoint, arbitration is not workable. Creditors have a vital interest in the debtor's assets, and both the debtor and creditors have a strong interest in the debtor's achieving a successful reorganization. Requiring the debtor to resort to arbitration would delay the efforts to reorganize. In this case, Braniff, after a year's effort, is on a tight schedule attempting to achieve what appears to be its last chance to reorganize with a flying operation. Resolution of the issues, for which arbitration has been requested, is absolutely essential to Braniff's successful completion of its reorganization. Resorting to arbitration at this stage would result in such delay as to effectively deny all creditors and the debtor the opportunity for reorganization. Moreover, arbitration would fragment resolution of the same issues among the two movants and all other airlines asserting the same position. It is possible that an arbitration panel would resolve those issues as to these specific parties in one fashion with this court resolving them differently for all other creditors having similar claims.

The motion for arbitration will be denied.

---

4. Braniff, in footnote 11 on page 21 of its brief, concedes that the procedure in the agreements regarding accounting is appropriate to determine the base amount due or owing on each account and does not anticipate a dispute over the mathematical calculations.