In re **MOR–BEN INSURANCE MARKETS CORPORATION, a California corporation, Debtor.**

**MOR–BEN INSURANCE MARKETS CORPORATION, a California corporation, Appellant,**

v.

**TRIDENT GENERAL INSURANCE COMPANY, LTD, J.S. Pincham & Company and Lander Haywood, Ltd, Appellees.**

**MOR–BEN INSURANCE MARKETS CORPORATION, a California corporation, Appellant,**

v.

**EXCESS INSURANCE COMPANY, LTD, J.S. Pincham & Company, and Lander Haywood, Ltd., Appellees.**

**MOR–BEN INSURANCE MARKETS CORPORATION, a California corporation, Appellant,**

v.

**TRIDENT GENERAL INSURANCE COMPANY, LTD, J.S. Pincham & Company and Lander Haywood, Ltd, Appellees.**

**MOR–BEN INSURANCE MARKETS CORPORATION, a California corporation, Appellant,**

v.

**INSTITUTOS DE RESIGURROS DE BRAZIL, commonly I.R.B.; J.S. Pincham & Company, Ltd; Lander Haywood, Ltd, Appellees.**

BAP Nos. SC 86–1311–AsJV, SC–86–1354–AsJV, SC 86–1943–AsJV and SC 86–2164–AsJV.
Bankruptcy No. 82–04196–P11.
Adv. Nos. C85–0847–LM11, C85–0846–LM11, C86–0222–LM11.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted March 18, 1987.

Decided April 22, 1987.

David L. Buchbinder, Fitzmaurice & Buchbinder, San Diego, Cal., for appellant.

Karen Ventrall, LeBoeuf, Lamb, Leiby & MacRae, San Francisco, Charles A. Viviano, Viviano & Bradley, San Diego, Cal., for appellees.

Before ASHLAND, JONES, and VOLINN, Bankruptcy Judges.

## OPINION

ASHLAND, Bankruptcy Judge:

The debtor in possession Mor-Ben Insurance Markets Corporation appeals from orders of the bankruptcy court staying adversary proceedings and compelling arbitration.

We affirm.

## FACTS

In October 1976, Mor-Ben entered into agreements with Trident General Insurance Company, Ltd, Excess Insurance Company, Ltd, and Institutos De Resigurros De Brazil (I.R.B.), whereby Mor-Ben was given authority to bind property insurance on behalf of the participating insurers. Under the agreements Mor-Ben was to maintain yearly accountings of claims paid and outstanding. The agreements named J.S. Pincham & Co. as the broker. The agreements contained an arbitration clause stating in part, "All differences of whatever nature, arising out of this agreement, shall be submitted to a court of arbitration in London ..." Mor-Ben is a California corporation with its principal office in San Diego, California. However, appellees Trident, Excess, J.S. Pincham & Co., and Lander Haywood, Ltd are organized under the laws of Great Britain with their principal places of business in London.

Mor-Ben contends that in May of 1980, when the agreement expired, it submitted an accounting to J.S. Pincham & Co. requesting reimbursement. Reimbursement was made of all the then outstanding liabilities. However, Mor-Ben contends that it continued to pay out claims and return premiums expecting to be reimbursed for these payments but was not.

On September 30, 1982 Mor-Ben filed a Chapter 11 petition. Thereafter, Trident, Excess, and I.R.B. filed proofs of claim. On August 29, 1985 Mor-Ben filed adversary proceedings against Trident and Excess for, among other things, breach of contract. On November 22, 1985 Trident and Excess filed motions to stay the adversary proceedings and compel arbitration. The bankruptcy court granted the motions by orders entered on March 31, 1986. 59 B.R. 194. On March 24, 1986 Mor-Ben filed an adversary proceeding against I.R.B. On May 28, 1986 I.R.B. filed a motion to stay the adversary proceeding and compel arbitration. This motion was granted by the bankruptcy court in an order entered on December 12, 1986.

On December 6, 1985 Mor-Ben filed an objection to Trident's proof of claim. On April 21, 1986 Trident made a motion to stay the proceeding and compel arbitration. This motion was granted in an order entered on September 29, 1986. Mor-Ben appeals the bankruptcy court's four orders staying the proceedings and compelling arbitration.

## ISSUE

Whether the bankruptcy court erred in staying the adversary proceeding and compelling arbitration pursuant to the agreement.

## STANDARD OF REVIEW

■ The bankruptcy court's findings of fact are subject to a clearly erroneous standard of review; conclusions of law are reviewed de novo. *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374 (9th Cir.1985).

## DISCUSSION

■ Mor-Ben contends that the filing of the proofs of claim by the insurers subjected them to the jurisdiction of the bankruptcy court for resolution of those claims. Filing a proof of claim does not necessarily subject a creditor to the jurisdiction of the bankruptcy court. *See, In re Castlerock Properties*, 781 F.2d 159 (9th Cir.1986). A claim may be filed to secure a creditor's right to partake in distribution of the debtor's estate without waiving his right to arbitration. *In re Hart Ski Mfg Co.*, 18 B.R. 154 (Bankr.D.Minn.1982), *affirmed*, 22 B.R. 763 (D.Minn.1982), *affirmed*, 711 F.2d 845 (8th Cir.1983). Moreover, the jurisdiction of the bankruptcy court is not in question here. The mere fact that a court has jurisdiction does not preclude it from compelling the parties to arbitrate when the arbitration forum is required by the Federal Arbitration Act. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Once the arbitrator's award has been determined, it still is subject to enforcement by domestic courts. The Convention on Recognition and Enforcement of Foreign Arbitral Awards provides for refusal to recognize or enforce an award contrary to domestic public policy. Art. V(2)(b), 21 U.S.T. 2517, 2520, T.I.A.S. No. 6997 (1970).

■ Mor-Ben contends that the bankruptcy court's finding that arbitration is the "most expeditious" manner to resolve the disputes between the parties is clearly erroneous. We disagree. In light of the fact that the majority of the appellees have their principal places of business in London and the subject dispute involves issues of insurance law and insurance accounting practices, we cannot conclude that the court's finding is clearly erroneous. Furthermore, we are not convinced that arbitration need be the "most expeditious" method of resolution in order to enforce an arbitration clause in a contract.

■ Mor-Ben entered into an agreement which compels arbitration in London of all differences of whatever nature arising out of the contract. It was the intent of the parties upon entering the agreement to settle their disputes through arbitration. The purpose of the Arbitration Act, 9 U.S.C. § 1 et seq., is to ensure judicial enforcement of such agreements. *See, Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). Strong federal policy in general favors the enforcement of these agreements. *Mosses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The desirability of an arbitration clause especially in an international transaction agreement is well recognized and must be respected. *Scherk v. Alberto Culver Co.*, 417 U.S. 506, 516–20, 94 S.Ct. 2449, 2455–57, 41 L.Ed.2d 270 (1974). "[A]greeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13–14, 92 S.Ct. 1907, 1915, 32 L.Ed.2d 513 (1972).

Mor-Ben expressed its concern for fragmented litigation if arbitration were compelled. Mor-Ben contends that all the appellees who were parties to the agreement desire to settle disputes through arbitration and, as such, numerous proceedings may

result. The Ninth Circuit court of appeals has recently addressed this issue in *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691 (9th Cir.1986) stating, "[t]he Arbitration Act requires district courts to compel arbitration even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." *Id.* at 698.

Section 2 of the Arbitration Act provides, "A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

■ Mor-Ben contends that the conflicting policies of the Bankruptcy Code and the Arbitration Act preclude the Arbitration Act from applying in certain bankruptcy matters. It cites *In re Braniff Airways Inc.*, 33 B.R. 33 (Bankr.N.D.Tex.1983), as support for its position. In *Braniff* the arbitration forum was not favored where it would be determining which creditors were to share in the debtor's estate and the priority of those claims. *Id.* at 35. We agree with the bankruptcy court that *Braniff* is distinguishable from the present case. The issues sought to be arbitrated in *Braniff* were purely bankruptcy issues which did not even fall within the arbitration clause. *Id.* at 35–36. Parties will not be compelled to arbitrate an issue which exceeds the scope of the arbitration clause. *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

■ A two step analysis was used in *Mitsubishi* to determine whether an American court should enforce the arbitration clause in an international trade agreement when the claims arose in the antitrust context. First the Court looked at whether the statutory issues in question fell within the scope of the parties' agreement to arbitrate. Here the determination of the validity and amount of the insurers' claims are the bankruptcy issues in question; these issues fall within the broad scope of the arbitration clause which states, "[a]ll differences of whatever nature, arising out of this agreement, shall be submitted to a court of arbitration in London ..." The contractual relationship between the parties forms the basis of the claims against Mor-Ben for monies allegedly due and the claims for breach of contract. Furthermore any doubts about whether a dispute falls within the arbitration clause should be resolved in favor of arbitration. *Francesco's B., Inc. v. Hotel and Restaurant Emp.*, 659 F.2d 1383 (9th Cir.1981).

■ The next step in the *Mitsubishi* analysis is to determine whether the legal constraints, external to the parties' agreement to arbitrate, prohibit arbitration of the claims. Neither the Bankruptcy Code nor its legislative history contain anything which would prevent a court of arbitration from determining whether the insurers' claims are valid or whether any party has broken the contract. Thus, the fact that these issues arise in the context of a bankruptcy does not invalidate the agreement of the parties to have the dispute heard by an arbitrator in London.

The case of *In re Hart Ski Mfg Co. Inc.*, *supra*, is factually similar to the case at hand. In *Hart* the debtor, a Minnesota corporation, objected to the defendant's proof of claim; the defendant, a West German corporation, moved to stay the bankruptcy proceeding and compel arbitration pursuant to the parties' agreement to arbitrate. The court found that the issues raised by the defendant's proof of claim and the objections thereto were within the scope of the agreement to arbitrate, wherein any disputes arising out of the sale of certain pieces of equipment were to be submitted to arbitration. The court further found that any financial disadvantage or inconvenience caused to the debtor by compelling international arbitration did not justify a denial of the right to arbitrate; the parties contracted for, and had the right to, an arbitration forum.

We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against a waiver of the right to a judicial

forum, that intention will be deducible from the text or legislative history. '(citation omitted). Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue. Nothing in the meantime, prevents a party from excluding statutory claims from the scope of an agreement to arbitrate. (citation omitted).

*Mitsubishi,* 105 S.Ct. at 3355.

The policy which the Court relied heavily on in *Mitsubishi* as well as in *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), and *Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) is one of international comity. The Court placed great importance on respect for foreign tribunals even if this would risk a contrary result from that in a domestic forum.

> The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts.... We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts.

*The Bremen,* 407 U.S. at 9, 92 S.Ct. at 1912.

■ Absent a Congressional mandate to preclude arbitration in the bankruptcy context, or a compelling situation seriously affecting the rights of creditors in a bankruptcy, a valid clause in an international trade agreement to arbitrate a dispute must be enforced.

Based on the forgoing we affirm the orders of the bankruptcy court staying the bankruptcy proceedings and compelling arbitration.