In re **WM. S. NEWMAN BREWING CO., INC., Debtor.**

**WM. S. NEWMAN BREWING CO., INC., Plaintiff,**

v.

**C. SCHMIDT AND SONS, INCORPORATED, Defendants.**

Bankruptcy No. 87–11129.
Adv. No. 87–1179.

United States Bankruptcy Court, N.D. New York.

June 13, 1988.

Ronald H. Sinzheimer (Peter J. Molinaro, of counsel), Albany, N.Y., for plaintiff.

McNamee, Lochner, Titus & Williams (Peter A. Pastore, of counsel), Albany, N.Y., for defendants.

## CERTIFICATION TO THE DISTRICT COURT FOR ENTRY OF FINAL ORDER AND FOR WITHDRAWAL OF REFERENCE OR FURTHER DIRECTION WITH RESPECT TO RELATED PROCEEDING

JUSTIN J. MAHONEY, Chief Judge.

The debtor, a New York corporation, filed this action for one million dollars in damages for defendant's alleged breach of contract to brew and bottle the debtor's product, Newman's Albany Amber Beer.

Defendant, C. Schmidt and Sons, Inc. ("Schmidt"), a Pennsylvania corporation, timely answered. Schmidt has moved to dismiss the action or, alternatively, for a stay of the present action pending arbitration based upon two of its asserted affirmative defenses: 1) Bankruptcy Court lacks subject matter jurisdiction over the action; and 2) The present dispute must be resolved by arbitration in Philadelphia, Penn-

sylvania as agreed upon under the terms of the written agreement between the parties.

The debtor resists the motion and has cross-moved to strike Schmidt's first two affirmative defenses. The Court shall consider each of the aforementioned bases for dismissal after a brief review of the factual background preceding the filing of the Chapter 11 case and the initiation of this action.

The debtor produces and markets an American specialty beer. Since 1985, the debtor has contracted to have the product brewed and bottled by other larger brewers. In August, 1986, the debtor entered into an agreement with Schmidt for Schmidt to brew and package Newman's Albany Amber Beer. By its terms, the agreement was to continue in effect until March 31, 1989.

Thereafter, Schmidt ceased doing business as a brewery and did not fulfill the debtor's last order placed with Schmidt in May, 1987.

The debtor filed a Chapter 11 petition under the Bankruptcy Code on August 7, 1987. On November 13, 1987 Schmidt filed a proof of claim in the amount of $13,181 for unpaid invoices on its contract with the debtor.

The complaint initiating this action contained a demand for a jury trial. Prior to service on the defendant, the Court informed the plaintiff that it would not conduct a jury trial in this matter. By letter to the Court, plaintiff withdrew its request for a jury trial but proceeded to serve defendant with a copy of the complaint as originally filed which included the jury demand.

Schmidt first learned of debtor's withdrawal of its request for a jury trial during the exchange of briefs on the present motion to dismiss. Schmidt immediately moved to file its own demand for a jury trial or, in the alternative, to strike debtor's withdrawal of its jury demand upon which it had relied.

Without deciding the merits of either party's entitlement to a trial by jury, this Court at the May 2, 1988 hearing directed reinstatement of the plaintiff's initial demand for a jury trial so as not to foreclose Schmidt's demand for the same. This action by the court was motivated by Federal Rule of Civil Procedure 38. This rule provides that a demand for trial by jury may not be withdrawn without the consent of the parties. F.R.Civ.P. 38(d).

As a collateral matter to the issues in litigation, debtor's counsel informed the Court at the May 2 hearing that Schmidt was currently in the process of an informal liquidation.

The disclosure statement filed by the debtor discloses that any recovery in the present lawsuit shall provide a fund from which unsecured creditors shall be paid under the terms of the debtor's proposed plan which has not yet been voted upon by creditors.

### Bankruptcy Court Jurisdiction

The jurisdiction of the Bankruptcy Court (derived from the grant of jurisdiction to the District Court at 28 U.S.C. § 1334) is set forth in 28 U.S.C. § 157, as adopted by the Bankruptcy Amendments and Federal Judgeship Act of 1984.

A bankruptcy judge may hear and enter pertinent orders and judgments in "... all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, ..." 28 U.S.C. § 157(b)(1). As to proceedings which are not core but are related to a case under title 11, a bankruptcy judge may hear the matter and submit proposed findings of fact and conclusions of law to the district court. The findings and conclusions are then subject to de novo review by the district court prior to the district court's entry of a final order. 28 U.S.C. § 157(c)(1).

The only category of civil proceedings not falling within the foregoing classifications of "core" or "related" are those proceedings which are so far removed from the title 11 case or the result of which would have so little impact upon the administration of the title 11 case that they fall outside the jurisdiction granted to the district court and, derivatively, the jurisdiction of the bankruptcy court. 1 *Collier on Bankruptcy* (15th ed.) ¶ 3.01 [c][vi]. The

present action is not within this latter category.

The statutory grant of jurisdiction is sufficiently broad to encompass the present action. The pivotal question remains, however, whether the present action is "core" or "related" in determining the extent of this court's jurisdiction, a determination made in the first instance by the bankruptcy court. 28 U.S.C. § 157(b)(3).

As noted above, "core proceedings" are defined in 28 U.S.C. § 157(b)(1) as those proceedings which arise under title 11 or arise in a case under title 11. Section 157(b)(2) provides an illustrative but nonexclusive list of core proceedings.[1]

The debtor argues that the present action is a core proceeding because it falls into three of the categories delineated in § 157(b)(2):

(B) allowance or disallowance of claims against the estate ...

(C) counter claims by the estate against persons filing claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship ...

As the debtor points out, the present action arguably fits into any one of the foregoing categories since Schmidt seeks to set off against any recovery in this action amounts assertedly owed it by the debtor reflected in its proof of claim.

■ Notwithstanding the fact that this action technically falls within the literal wording of § 157(b)(2), the Court concludes that it is not a core proceeding. The listed categories of § 157(b)(2) must be read in light of the definition of core proceeding provided in § 157(b)(1). *In re Nanodata Computer Corp.*, 74 B.R. 766, 769 (W.D.N.Y.1987). Since this cause of action existed prior to and apart from the filing of the debtor's petition in bankruptcy, it cannot be said to arise under title 11 or arise in a case under title 11. The court therefore concludes that this is a related proceeding and, absent the consent of the parties, jurisdiction is accordingly limited and governed by 28 U.S.C. § 157(c)(1).

■ Because of the demand for a jury trial no purpose would be served in having the bankruptcy court serve as a proposed fact finder as outlined in § 157(c). The proceeding may not be heard by this court in light of the jury demand. This conclusion is premised on the assumption that the parties are entitled to a jury trial.[2] Absent

---

1. Section 157(b)(2) provides:
(2) Core Proceedings include, but are not limited to—
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12 or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate; ·
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;
(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid or recover fraudulent conveyances;
(I) determination as to the dischargeability of particular debts;
(J) objections to discharge;
(K) determinations of the validity, extent, or priority of liens;
(L) confirmations of plans;
(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against the persons who have not filed claims against the estate; and
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

2. By way of background, there has been much confusion over the past ten years and a divergence of opinion among the courts in resolving the two distinct issues of the right to a jury trial in bankruptcy proceedings and the authority of the bankruptcy judge to conduct jury trials.

Whereas 28 U.S.C. § 1480, adopted by the Bankruptcy Reform Act of 1978, ("Bankruptcy Code") intended to preserve any existing right to trial by jury when the action was brought in

240

jurisdictional consent, a jury trial in a related case must be conducted in the first instance in the district court. *In re I.A. Durbin, Inc.*, 62 B.R. 139, 146 (S.D.Fla. 1986). Cf. *In re McCormick*, 67 B.R. 838 (D.Nev.1986).

*Arbitration*

Schmidt argues that this action should be stayed or dismissed pending arbitration proceedings in Philadelphia.

The contract between the parties provides as follows:

*Section 14. Arbitration*

Excepting for the provision contained in paragraph 1.4 hereof, both parties agree that any dispute, controversy or claim arising out of this Agreement or the alleged breach thereof shall be settled by arbitration held in accordance with the commercial rules of the American Arbitration Association and judgment upon the award rendered by the arbitrator therein may be entered into [sic] any court having competent jurisdiction thereof. It is further agreed the venue of any such arbitration shall be Philadelphia, Pennsylvania, unless otherwise agreed, and the procedural and a [sic] substantive law of the Commonwealth of Pennsylvania shall be applicable.

either the Bankruptcy Court or District Court, *In re Graham*, 747 F.2d 1383 (11th Cir.1984), the subsequent passage of 28 U.S.C. § 1411 has courts split on the issue of a litigant's right to a jury trial in any cases excepting personal injury or wrongful death tort claims. See *In re Smith*, 84 B.R. 175, 177 (Bankr.D.Ariz.1988).

Further confusion has been generated by the abrogation of Bankruptcy Rule 9015, effective August 1, 1987, which set forth the procedure for conducting jury trials in bankruptcy courts. Regarding the abrogation of the Rule, the Advisory Committee noted:

Rule 9015 has been cited as conferring a right to jury trial in other matters before bankruptcy judges ... Rule 9015 is abrogated. In the event the courts of appeals or the Supreme Court defines a right to a jury trial in any bankruptcy matters, a local rule in substantially the form of Rule 9015 can be adopted ...

In light of the underlying rationale for elimination of the Rule, this court accords no special significance to the Rule's abrogation.

■ At the outset, this court recognizes a strong federal policy favoring arbitration of disputes which fall within the purview of the United States Arbitration Act ("Arbitration Act"), 9 U.S.C. § 1, et seq.[3] At times, however, the policy underlying the Arbitration Act must be balanced against the policy of a federal bankruptcy law which centralizes jurisdiction over estate property and creditors' claims in one forum in order to facilitate the orderly administration of a case.

The potential conflict between the two statutes was addressed in *Zimmerman v. Continental Airlines, Inc.*, 712 F.2d 55 (3d Cir.1983), cert. denied, 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984). In *Zimmerman*, the court found that the bankruptcy court did not abuse its discretion in failing to honor a contractually agreed upon arbitration provision and proceeding to a trial of the issues. The third circuit noted:

In the instant case, ..., the competing policies, both representing important congressional concerns, are not easily reconcilable ... Bankruptcy proceedings, however, have long held a special place in the federal judicial system. Because of their importance to the smooth functioning of the nation's commercial activities, they are one of the few areas where Congress has expressly preempted state

Finally, those cases reviewed by this court denying the right to a jury trial have been in core proceedings, traditionally equitable in nature with no right to trial by jury under the Seventh Amendment. See, e.g. *In re Harbour*, 840 F.2d 1165 (4th Cir.1988).

No case has been found denying the right to a trial by jury in a related proceeding that involve issues similar to those before this court.

**3.** 9 U.S.C. § 3 reads as follows:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

court jurisdiction. See 28 U.S.C. § 1334. While the sanctity of arbitration is a fundamental federal concern, it cannot be said to occupy a position of similar importance. Therefore, because of the importance of bankruptcy proceedings in general, and the need for the expeditious resolution of bankruptcy matters in particular, we hold that the intentions of Congress will be better realized if the Bankruptcy Reform Act is read to impliedly modify the Arbitration Act. Thus, while a bankruptcy court would have the power to stay proceedings pending arbitration, the use of this power is left to the sound discretion of the bankruptcy court. [Footnote omitted]. 712 F.2d at 59.

■ Certain factors have been identified and weighed in assessing the proper exercise of a bankruptcy court's discretion to stay litigation pending arbitration. These include: 1) the extent to which special expertise is needed to resolve disputes; 2) the identity of the persons comprising the arbitration committee and their track record in resolving disputes between the parties; and 3) the degree to which the nature and extent of the litigation makes the judicial forum preferable to arbitration. *Double TRL, Inc. v. F.J. Leasing, Inc., (In re Double TRL, Inc.)* 65 B.R. 993, 998 (Bankr.E.D. N.Y.1986).

■ In weighing the first two factors in the present case, neither militates in favor of staying the present proceeding. The issues at bar involve questions of contract law which are not of a type requiring any special expertise. *In re Continental Airlines,* 60 B.R. 472, 479 (Bankr.S.D.Tex. 1986). Cf. *Matter of R.M. Cordova Intern., Inc.* 77 B.R. 441 (Bankr.N.J.1987). The federal court has expertise at least equal to the arbitrators in the resolution of Pennsylvania law as it relates to the present contractual dispute. Additionally, the identity of the arbitrators is unknown. There is no prior history of any disputes between the parties resolved by arbitration so as to permit an assessment of the efficiency of the arbitrators.

In contrast, assessment of the third factor, namely, the preference of a judicial forum to arbitration, when considered within the context of the proposed plan, strongly favors the conclusion that the litigation proceed in the present forum.

The critical stage of the chapter 11 proceeding is apparent. The disclosure statement has not yet been approved. Further, as noted previously, the plan calls for payment to unsecured creditors commensurate with any recovery in the present lawsuit. There is a distinct advantage to the creditor body in monitoring the feasibility and progress of the proposed plan to have the litigation pending in the same court which has jurisdiction over the entire case.

Furthermore, the suggestion that the defendant corporation may be in the process of an informal dismemberment supports a preference for a judicial forum capable of affording any necessary injunctive relief. In short, it is in the best interests of the creditors to have the assets of the defendant corporation subject to the jurisdiction and control of a judicial forum.

After careful consideration of the issues involved, the court concludes that litigation should proceed in this court and that the request for a stay should be denied.

Before reaching this conclusion, the court gave special attention to the cases cited by counsel for the defendant, which have upheld *forum selection clauses* as presumptively valid and enforceable in bankruptcy absent a showing of fraud, or that enforcement would violate a strong public policy or be unreasonable. See e.g. *In re Diaz Contracting, Inc.,* 817 F.2d 1047 (3rd Cir.1987). Schmidt urges application of the same standard in enforcing the arbitration clause at issue by characterizing it as a "forum selection clause."

*Diaz* involved a debtor's suit filed in the U.S. Bankruptcy Court for the District of New Jersey to recover monies owed by the defendant. The defendant moved to dismiss upon the basis that the parties' contract required that all actions arising under the contract be brought in the courts of the State of New York. In applying the standard enunciated by the United States Su-

preme Court in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), for the enforcement of forum selection clauses, the third circuit directed the bankruptcy court to dismiss Diaz's suit, with leave for the debtor to refile in the courts of New York.

The facts of *Diaz* are totally inapposite and distinguishable from the facts at hand. In *Diaz* there were no federal policies in conflict as between the Arbitration Act and the Bankruptcy Act. *Diaz* involved a choice between two competing *judicial* forums, with very explicit language requiring that actions arising under the parties' contract be brought in the courts of the State of New York.

In contrast is the language in the contract at issue, that "the venue of any *such arbitration* shall be Philadelphia, Pennsylvania" (emphasis supplied). This court would have been presented with a different issue had the parties' contract provided that any dispute arising thereunder be litigated in the courts of the State of Pennsylvania sitting in Philadelphia. The issue before the court is not the enforcement of a forum selection clause.

Many of the forum selection cases, as in *M/S Bremen* which dealt with a dispute between a German and an American corporation, are concerned in preserving a necessary order and predictability to *international business transactions.* Similar considerations support a strong public policy favoring enforcement of *international arbitration.* *In re Mor-Ben Ins. Markets Corp.*, 73 B.R. 644, 649 (9th Cir. BAP 1987). No such considerations, however, present themselves in this case.

Finally, Schmidt argues a lack of subject matter jurisdiction because the parties have opted for another forum and, in effect, ousted the court of jurisdiction. As enunciated by the U.S. Supreme Court, it is a vestigial legal fiction that the parties to a contract can oust a court of jurisdiction. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 92 S.Ct. 1907, 1914, 32 L.Ed.2d 513. As concluded above, the court has jurisdiction.

Assuming the district court recognizes a right to trial by jury in this matter, it is this court's recommendation that the district court enter a final order denying defendant's motion to dismiss, striking defendant's first two affirmative defenses, and setting this matter down for trial.

The bankruptcy clerk is directed to submit this proceeding to the clerk of the district court for inclusion on its calendar.

It is so ORDERED.