**In re GUILD MUSIC CORPORATION, Debtor.**

**Bankruptcy No. 8800775.**

United States Bankruptcy Court,
D. Rhode Island.

May 26, 1989.

John Boyajian, Andrew S. Richardson, Boyajian, Harrington & Richardson, Providence, R.I., for debtor.

Edward J. Bertozzi, Jr., Edwards & Angell, Providence, R.I., for trustee.

Bruce Nathan, Kreindler & Relkin, New York City, for Avnet, Inc.

Allan M. Shine, Winograd, Shine & Zacks, Providence, R.I., for R.I. Hosp. Trust Nat. Bank.

Brian J. Spero, Partridge, Snow & Hahn, Providence, R.I., for Blue Cross/Blue Shield of Rhode Island.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

The debtor, Guild Music Corporation ("Guild"), moves this Court to reconsider, amend and/or clarify our February 28, 1989, Order, which affected a number of unsettled issues between the debtor and Avnet, Inc. (Avnet), including the arbitration of various disputes relating to Guild's 1986 purchase of assets from Avnet. On April 11, 1989, we held a pretrial conference at which the interested parties agreed to rely on their previously filed memoranda and oral arguments, in lieu of a further hearing. Based mostly upon our own research of the relevant legal authorities addressing the arbitration issue, we agree with the debtor that, to the extent that we ordered arbitration of matters exclusively reserved to the bankruptcy court, the February 28, 1989, Order should be modified.

## BACKGROUND

On February 25, 1989, the Trustee, Michael Weingarten, filed an Application for Supplemental Order on Sale of Assets. In this application, the Trustee noted that the sale of *substantially all* of the debtor's assets was approved by this Court on January 24, 1989, and that the closing was scheduled to take place on March 1, 1989.[1] He also alleged that, upon investigation by the title attorney, it was discovered that "[b]y mutual mistake and inadvertence, Parcel III was omitted from the description of the debtor's real estate set forth in the Trustee's bid package information and the Offer to Purchase signed by the Buyer and Trustee and approved by the Court on January 24, 1989." (Trustee's Application for Supplemental Order on Sale of Assets, page 1–2, February 25, 1989.) The Trustee traced the origin of the "mistake" to the 1986 acquisition by the debtor of the assets of Guild (formerly known as Guild Acquisition Corporation) from Avnet. Guild's position is that, by mutual mistake and through pure oversight, Avnet's deed to the debtor in 1986 "inadvertently failed to include Parcel III." During several chambers conferences, Avnet claimed that the failure to include Parcel III, on which the manufacturing plant is located, was not the result of a mutual mistake. In order to rectify these seriously conflicting positions[2] in time for the March 1, 1989 closing, the Trustee reached a compromise with Avnet, the essence of which is set forth in our February 28, 1989, Order.[3] The legal basis for many of the concessions made by the Trustee, as more particularly set forth in our Order of February 28, 1989, is what the debtor questions now, and as it did last February, prior to the entry of the order.

---

1. On February 23, 1989, we entered a supplemental order extending the closing date from February 24 to March 1, 1989.

2. Regarding the reformation issue, the respective versions of what really happened are so diametrically opposed that they are not susceptible to reconciliation based on opinion, memory, or any of the other subjective factors that account for people seeing and/or hearing things differently. Accordingly, the parties and counsel are forewarned that at the conclusion of the evidentiary hearing on the reformation issue, it is the intention of this Court, if warranted, to forward the transcript to the Office of the United States Attorney pursuant to 18 U.S.C. § 3057, for investigation into whether any bankruptcy crimes have been committed, including perjury, or its subornation.

3. The Trustee's Application for Supplemental Order was filed with this Court on February 27, 1989, with a request for an emergency hearing. We scheduled a hearing on that same day, at which time the urgency of the Supplemental Order was pressed by the Trustee, the Trustee's attorney, the attorney for Rhode Island Hospital Trust National Bank (secured creditor) and Avnet, Inc. The debtor's attorney and Brian Spero, Esq., attorney for many unsecured creditors, objected. Being primarily concerned with possible dire consequences if the sale was not consummated on March 1, as represented by the Trustee, we entered the Order.

Specifically, Guild challenges the following provisions of the Order:

d) the trustee and Avnet, Inc. shall forthwith submit the issue of reformation of the August 19, 1986 deed from Avnet, Inc. to debtor to the arbitration presently pending ... in which arbitration the issue of the amount of payment due to the trustee or Avnet, Inc., as the case may be ... is presently being adjudicated.... A decision of the arbitrators on said issues shall be final and binding upon Avnet, Inc., the debtor, the trustee and this Court save on such grounds as shall exist under the Federal Arbitration Act.

e) if the arbitrators determine (i) that the trustee was not entitled to reformation of the said August 19, 1986 deed and (ii) that a payment is due Avnet Inc. under the agreement, then Avnet, Inc. shall be entitled to an Order forthwith directing the trustee to pay Avnet, Inc. from the escrow fund the full amount of such payment determined by the arbitrators to be due Avnet, Inc.

f) if the arbitrators determine (i) that the Trustee was entitled to reformation of the said August 19, 1986 deed and (ii) that a payment is due Avnet, Inc. under the Agreement, then, notwithstanding the March 9, 1989 bar date for filing claims, Avnet's claim as set forth in the order confirming the award of the arbitrators ... shall be forthwith allowed as a nonpriority unsecured claim in the class including general trade creditor's claims....

## DISCUSSION

At the outset, we of course recognize the proposition that the issue of subject matter jurisdiction may be raised at any time. *In re Dreske Greenway Trust,* 14 B.R. 618 (Bankr.E.D.Wis.1981), and that "[s]ubject matter jurisdiction cannot be conferred upon the bankruptcy courts by consent of the parties." *In the Matter of Paso Del Norte Oil Co.,* 755 F.2d 421, 425 (5th Cir.1985). Therefore, Avnet's initial argument that the present motion is barred under the doctrine of estoppel, must be and is rejected. *In re Dreske Greenway Trust, supra,* ("[S]ubject matter jurisdiction can neither be stipulated to, nor objection waived or prevented by estoppel" *Id.* at 622 (other citation omitted)). With these basics in mind, we turn to the merits of the instant motion. The procedural aspect involved is a conflict between two prominent federal statutes, the Bankruptcy Code, 11 U.S.C. § 101 et seq. and the Federal Arbitration Act, 9 U.S.C. § 1 et seq. In this regard, the debtor raises two issues: (1) whether certain matters contained in our February 28th Order are susceptible to arbitration, and (2) whether the Bankruptcy Court may divest itself of jurisdiction in "core" matters.

The debtor argues that this Court, by ordering the debtor to submit certain controversies to arbitration, has impermissibly relinquished its exclusive jurisdiction over such core bankruptcy matters as "the allowed amount of any claim by Avnet under 11 U.S.C. § 502," "the decision as to its secured status under § 506," and "the determination of its priority relative to the other creditors." (Guild's Memorandum in Support of Motion to Reconsider, March 20, 1989, page 2.)

Although neither party has presented any authority directly addressing the issue, our own research discloses that many courts have analyzed and considered what happens where there is a conflict between these two federal statutes. *See, e.g., Zimmerman v. Continental Airlines,* 712 F.2d 55 (3rd Cir.1983); *In re Muskegon Motor Specialties Co.,* 313 F.2d 841 (6th Cir.1963); *Johnson v. England,* 356 F.2d 44 (9th Cir. 1966); *In re Mor–Ben Insurance Markets Corp.,* 73 B.R. 644 (9th Cir.BAP, 1987); *Bender Shipbldg. & Repair Co., Inc. v. H.B. Morgan, Jr. (In re Morgan),* 28 B.R. 3 (9th Cir. BAP 1983); *Societe Nationale Algerienne v. Distrigas Corp.,* 80 B.R. 606, 18 C.B.C.2d 865 (D.Mass.1987); *Double TRL, Inc. v. F.S. Leasing, Inc. (In re Double TRL, Inc.),* 65 B.R. 993 (Bankr.E.D.N.Y.1986); *Braniff Airways, Inc. v. United Air Lines, Inc. (In re Braniff Airways, Inc.),* 33 B.R. 33 (Bankr.N.D.Tex.1983);

*Good Hope Industries, Inc. v. Connecticut Transport, Inc. (In re Good Hope Industries),* 16 B.R. 719 (Bankr.D.Mass.1982).

■ In addressing the same question, Judge Young, of the District Court for the District of Massachusetts, recognized that "[r]eaching a satisfactory reconciliation between the two is no simple matter especially when each statute advances clear and unassailable legislative policies and comes well-armed with strong judicial approval." *Societe Nationale Algerienne v. Distrigas Corp.,* 80 B.R. 606, 18 C.B.C.2d 865, 870 (D.Mass.1987). Nonetheless, our examination of the cases which have dealt with conflicts between the statutes in question indicates that in matters involving core bankruptcy issues, where the controversy is not of an international nature, and particularly, where the Chapter 11 debtor is likely to be successful in its reorganization, the Bankruptcy Code "impliedly modifies" the Arbitration Act. *See, e.g., Zimmerman, supra,* at 59; *In re Double TRL, Inc., supra,* at 998; *Societe Nationale Algerienne, supra; In re Braniff Airways, Inc., supra.* "Bankruptcy proceedings ... have long held a special place in the federal judicial system. Because of their importance to the smooth functioning of the nation's commercial activities, they are one of the few areas where Congress has expressly preempted state court jurisdiction. *See* 28 U.S.C. § 1334. While the sanctity of arbitration is a fundamental federal concern, it cannot be said to occupy a position of similar importance. Therefore, because of the importance of bankruptcy proceedings in general, and the need for the expeditious resolution of bankruptcy matters in particular, we hold that the intentions of Congress will be better realized if the Bankruptcy Reform Act is read to impliedly modify the Arbitration Act. Thus, while a bankruptcy court would have the power to stay proceedings pending arbitration, the use of this power is left to the sound discretion of the bankruptcy court." *Zimmerman, supra,* at 59.

In *Societe Nationale Algerienne, supra,* it was observed that "[t]he bankruptcy court does not ordinarily surrender its jurisdiction except under exceptional circumstances" *Id.* 80 B.R. 606, 18 C.B.C.2d at 871 (other citations omitted). In that case, the Court ruled that "the two most salient facts ... which distinguish it from the mainstream are the international character of the transaction and the presence of a failed Chapter 11 debtor." *Id.* 80 B.R. 606, 18 C.B.C.2d at 871. Thus, the Court's narrow holding, where it upheld the arbitration clause, was based on the presence of two factors, the international nature of the transaction[4] and the failed Chapter 11 debtor, neither of which are present in the instant dispute. Judge Young opted in favor of arbitration also for the reason that "[t]he foreign tribunal will thus not have to interpret and adjudicate any core bankruptcy issues such as creditors' priority, preferential transfers and offsets that were present in other cases where arbitration was denied." *Societe Nationale Algerienne, supra,* 80 B.R. 606, 18 C.B.C.2d at 872.

In *In re Braniff Airways, Inc., supra,* the Court proclaimed that "[w]ith the enactment of the Bankruptcy Code in 1978, Congress created a comprehensive framework to deal with the specialized area of bankruptcy problems, intending to centralize all disputes concerning such matters in the Bankruptcy Court, and consequently, intended that the arbitration act would not apply to bankruptcy matters. Section 1471 of Title 28 of the United States Code, the jurisdictional statute, gives the bankruptcy court jurisdiction of all bankruptcy matters." *Id.* at 34. The Court also held that "this congressional policy overrides the provisions of the Arbitration Act, particularly where, as here, the issues will determine which creditors are entitled to share in the debtor's assets and in what priority."

---

4. The District Court of Massachusetts, relying on the Supreme Court case of *Mitsubishi Motors Corporation v. Soler Chrysler Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 3357, 87 L.Ed.2d 444 (1985), remarked that "the 'emphatic' federal policy in favor of arbitration 'applies with special force in the field of international commerce.'" *Societe National Algerienne, supra,* 80 B.R. 606, 18 C.B.C.2d at 871.

*Id.* at 34. In *In re Mor–Ben Ins. Markets Corp., supra,* where the Bankruptcy Code was found not to take precedence over the Arbitration Act, the Court based its ruling on the fact that the arbitration panel would only be determining "whether the insurers' claims are valid or whether any party has broken the contract." *Id.* at 648. The Court distinguished its holding from that reached in *In re Braniff, supra,* because "[t]he issues sought to be arbitrated in *Braniff* were purely bankruptcy issues which did not even fall within the arbitration clause. *Id.* at 35–36. Parties will not be compelled to arbitrate an issue which exceeds the scope of the arbitration clause." *Id.* at 648.

A fair reading of these cases evinces a two step approach to reconciling the Bankruptcy Code with the Federal Arbitration Act. Where the issues to be arbitrated are not exclusively bankruptcy matters, but are otherwise related to the bankruptcy case, such issues *may* be referred to arbitration, in the sound discretion of the bankruptcy judge. *In re Double TRL, Inc., supra,* at 998. However, where the issues in dispute involve "core" bankruptcy matters, which are the exclusive subject matter of the bankruptcy court, such issues may not be referred to arbitration. *In re Braniff, supra.*

Here, our February 28, 1989, Order provides that the arbitration panel will decide the "amount of payment due to the trustee or Avnet, Inc.," the issue of reformation of the August 19, 1986 deed, and that if Avnet is due a payment under the Agreement, such claim will be allowed "as a non-priority unsecured claim in the class including general trade creditor's claims." (February 28, 1989, Order, provisions (d), (e), and (f).) It is clear that the "allowed"

amount of Avnet's claim,[5] and the determination of its secured and/or priority status are core matters, which are not subject to arbitration. Therefore, our February 28, 1989, Order should be modified to exclude those issues from arbitration.

The more difficult issue, however, is the question of the reformation, of the August 29, 1986 deed. This disputed point, which requires a determination of the intent of the parties at the time of the sale of the assets from Avnet to Guild in 1986, involves fact and legal (contract) questions, certainly related to the debtor's estate, but which do not constitute core matters under the Bankruptcy Code. *See* 28 U.S.C. § 157; *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *In re United Sec. & Communications, Inc.,* 93 B.R. 945 (Bankr.S.D.Ohio 1988); *In re Jandous Electric Construction Corp.,* BK No. 88–20680, A.P. No. 89–6015, 1989 WL 81139 (Bankr.S.D.N.Y. Mar. 24, 1989) (1989 Bankr. LEXIS 402). Consequently, it is within this Court's discretion to determine whether the bankruptcy court or the arbitration panel is the appropriate forum for deciding this reformation issue. *In re Double TRL, Inc., supra,* at 998. In exercising such discretion, which is not unfettered, we should first look to the arbitration clause in the original contract, and consider its intended scope.[6] *In re Mor–Ben Ins. Markets Corp., supra,* at 648. In the 1986 Asset Purchase Agreement, Section 16.17, the parties agreed to arbitrate "[a]ny controversy arising out of or relating to this Agreement or any modification or extension thereof (including a disagreement about its existence, validity, enforceability, interpretation or any claim for damages)." The determination of what was

---

5. There is a clear distinction between the amount of any claim due Avnet, and the "allowed" amount of such claim. We have no problem with the arbitration panel determining the amount of any claim due Avnet. That is precisely the type of issue the parties intended to be covered by the arbitration clause. The allowed amount of any claim, however, is a separate bankruptcy issue which can only be determined in this Court. *See In re Braniff Airways,* 33 B.R. 33 (Bankr.N.D.Tex.1983).

6. The United States Supreme Court recently stated that "§ 4 of the FAA does not confer a right to compel arbitration of any dispute at any time; it confers only the right to obtain an order directing that 'arbitration proceed in a manner provided for in the [parties'] agreement.'" *Volt Info Sciences v. Leland Stanford Jr. U.,* —— U.S. ——, ——, 109 S.Ct. 1248, 1253, 103 L.Ed.2d 488 (1989) (citing 9 U.S.C. § 4).

intended to be conveyed by the parties falls within the scope of this agreement.

A second consideration in deciding where the reformation issue should be heard, is the makeup of the arbitration panel. Since the reformation issue involves fact and legal questions, including contract considerations, at least one lawyer should be on the panel, preferably one who specializes in the subject matter of the controversy. As constituted, the panel does consist of one lawyer, Thomas C. Grassia, Esq.; one accountant, Arthur Hills; and one business consultant, Richard J. Olsen. Unfortunately, we do not know whether Mr. Grassia has a legal specialty, and if so, what it is. Nevertheless, this does not, per se, disqualify the panel from having the requisite background, skills and knowledge to decide this issue. Upon consideration of all of the relevant factors: the nature of the issues to be decided; the intended scope of the arbitration agreement, and the professional composition of the arbitration panel, we believe that the reformation issue can be determined by the arbitration panel as it is presently constituted, and it is so ordered, provided that matter is heard and decided within a reasonable time.[7] After the reformation issue is resolved, together with all of the accounting matters, the Bankruptcy Court will hear and decide any bankruptcy related issues.

Enter Judgment accordingly.

---

[7] Our deferral to the arbitration panel on the reformation issue is conditioned upon a speedy resolution of the dispute before that tribunal. If the matter is not heard and decided by August 31, 1989, then to the extent that this order authorized the parties to proceed via arbitration, it is vacated.