## ARMSTRONG v. ALLIANCE TRUST CO., Limited.

### No. 9366.

Circuit Court of Appeals, Fifth Circuit.

May 18, 1940.

Rehearing Denied July 8, 1940.

Chas. F. Engle, of Natchez, Miss., and Hubert S. Lipscomb, of Jackson, Miss., for appellant.

H. P. Farish, of Greenville, Miss., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

This litigation has been long and devious, but may be simply outlined. Appellant, George W. Armstrong, of Texas and Mississippi, in 1919 borrowed of appellee Alliance Trust Co., Ltd., of Dundee, Scotland, through a broker in Memphis, Tenn., $125,000 on the security of his plantation in Mississippi of 20,800 acres. The principal was payable over a period of ten years, and drew interest at 6% evidenced by coupon notes before maturity, 8% after maturity; and additional notes for 1½% of the original principal were made payable to the brokers, ostensibly as commissions. The deeds securing all these notes provided, among other things: "If default be made in the payment of any of the indebtedness hereby secured or in the faithful performance of any of the agreements as aforesaid, then the whole amount of such indebtedness shall * * * become due and collectible." No default occurred and the whole was duly paid except the last principal note for $45,000 due Jan. 1, 1930. Some payments were made on this, but on Jan. 18, 1934, Armstrong sought relief by composition and extension of all his debts under Sect. 74 of the Bankruptcy Act as enacted March 3, 1933, 47 Stats. 1467, 11 U.S.C.A. § 202. The proposals made to all the creditors except appellee were accepted, confirmed and carried out. The proposal to appellee was to execute new notes for the balance of the debt, about $43,000, figured on a basis of six percent after maturity less payments, secured by the plantation as before, but with the right to settle the whole by September, 1934, by paying $30,000 in cash. Appellee filed a rejection of this offer, asserting that $43,861.30 was due, and exhibiting its trust deed, but made no formal proof of its claim and prayed for no relief. Armstrong thereupon filed with the referee on Feb. 14, 1935, what he styled a reply and cross-bill to the rejection in which he set up that he had consummated his settlement with all his other creditors, had diligently sought to effect settlement with appellee and "having failed to do so has withdrawn his proposition of settlement, has notified said creditor he would stand upon his legal rights, and has demanded of said creditor the cancellation of the notes and deed of trust." Usury was then asserted in the transaction, both under the laws of Texas where the papers were signed, under the law of Tennessee where the notes were payable, and

under the laws of Mississippi where the loan was applied for, where the lands deeded as security lay, and which were expressly agreed to be the laws with reference to which the parties contracted. Large penalties and overpayments were alleged to be recoverable. The referee took evidence, held there was no usury, and this decision was brought up for review before the district judge. Armstrong, however, on January 14, 1936, suing as a citizen of Texas, filed on the equity side of the same court a bill, against Alliance Trust Co., Ltd., as a foreign corporation of Scotland, and against an individual alleged to be its agent and another individual alleged to be the trustee. in the trust deed, as citizens of Mississippi, and alleging that an amount of more than $3,000 was involved. It exhibited the deed of trust, set up usury in the debt it secured, asserted that the true indebtedness was overpaid, and that large sums were due to be repaid under either the laws of Texas or Mississippi, and prayed a cancellation of the deed and a recovery of $133,785 under the laws of Texas if they applied, or $66,892 under the laws of Mississippi if they applied. The bill also alleged the proceedings in bankruptcy as above stated and prayed that the bankruptcy case be consolidated with the bill and the evidence taken before the referee be used in the trial. The Alliance Trust Company alone answered, denying usury, and pleading the referee's judgment as res judicata. A motion to consolidate was also filed by Armstrong in the bankruptcy proceeding. The district judge, all parties agreeing, ordered that the findings of the referee and the evidence taken by him be treated and considered as the report of a master excepted to, and "to the extent above .indicated cause #1233 in bankruptcy be consolidated with this cause in equity; the costs in bankruptcy proceeding #1233 to be paid by the debtor Geo. W. Armstrong."

On a trial the district judge held there was no usury and dismissed the bill. This court held the usury laws of Mississippi applied and the judgment was affirmed. Armstrong v. Alliance Trust Co., 5 Cir., 88 F.2d 449. Armstrong then entered the courts of the State of Mississippi, claiming that this court was without. jurisdiction to decide his matter; but the Supreme Court of Mississippi held that this court had correctly interpreted the law of Mississipi, and moreover the issue of usury was res judicata, and denied relief. Alliance

Trust Co., Ltd., v. Armstrong, 185 Miss. 148, 186 So. 633.

In July, 1939, on Armstrong's petition the district court re-referred bankruptcy cause #1233 to the referee. Before the referee Armstrong again contended that the debt was usurious under the laws of Texas, and that Section 74, sub. g of the bankruptcy Act gave control to those laws, Texas being the place of contract, notwithstanding the agreement in 1919 that the laws of Mississippi should control; and that the bankruptcy court from the filing of his petition under Sect. 74 had exclusive jurisdiction over his property and affairs, so that neither the federal nor State courts of equity had jurisdiction to adjudicate them. Alliance Trust Company contended that the laws of Mississippi applied; that the offer made in bankruptcy by Armstrong proposed to reduce both the interest and principal of its secured debt contrary to Sect. 74, sub. i, and was properly rejected; and no lawful offer having been made, and the unlawful one having been expressly withdrawn, there was nothing else to be done to or by this creditor under Sect. 74; but if jurisdiction remained over it and its debt the full merits of the claim have been at the debtor's instance and on the order of the court referred to the equity side of the court and there finally adjudicated. The referee held against Armstrong, and as five years had passed since the bankruptcy proceeding was instituted and all matters involved in it had been disposed of he recommended final dismissal. The district court affirmed the referee and dismissed the case. This judgment is the basis of the appeal.

Ever since the appellee rejected the proposal of appellant in 1934 the latter's effort has been to apply the usury laws of Texas; but in the last hearing before the referee he first urged as a ground therefor the provision of Sect. 74, sub. g: "In application for extensions the court shall require proof from each *creditor filing a claim* that such claim is free from usury as defined by the laws of the place *where the debt is contracted.*" The referee thought the quoted provision could not constitutionally operate to invalidate a security taken many years before its enactment, even in bankruptcy; and that to avoid a grave question of that sort, all the circumstances of the loan, and especially the agreement. that it was made under the laws of Mississippi where the plantations were on which the money was to be expended

and which were offered as security, and the fact that the application was made in Mississippi, ought to be interpreted as showing the debt was contracted in Mississippi. We express no opinion on these questions, because the district judge rested his judgment on two points: That the matter of usury was res judicata; and that there was no valid offer to this creditor pending which would put exclusive jurisdiction over appellee's claim in the bankruptcy court, or enable it to compel its proof and filing under the Act so as to exclude other courts from its examination. We confine ourselves accordingly.

 A Section-74 proceeding can be filed only by the debtor, and he must submit an equitable and feasible plan for his rehabilitation. It need not alter each of his debts. By Section 74, sub. i, "Such extension or composition shall not reduce the amount of or impair the lien of any secured creditor, but shall affect only the time and method of its liquidation." This is said of confirming proposals, and does not prevent the making of a proposal to reduce a secured debt. If the particular creditor so affected consents, the proposal can of course be confirmed. But he can refuse to consent, and there is no power given a majority of secured creditors or the court to compel him. When Alliance Trust Company refused to consent to a proposal which involved its accepting much less than it claimed and than what the debtor then admitted owing, it was within its rights. The court confirmed the plan as to all others, leaving this debt unaffected. Armstrong then, instead of amending his offer, withdrew it, and began a fight to recover money from his former creditor. He now says he could not withdraw his offer without the court's sanction. We think he could. The offers to other creditors do not appear to have been bound up with this one, and were confirmed without dissent. This offer could not be enforced because contrary to 74, sub. i, and fell with its rejection.

 The debtor thereupon sought to use the bankruptcy court to recover a large sum from Alliance Trust Company. We need not enquire whether in a proceeding under Sect. 74 a debtor may collect from those he claims owe him. If he had such right he abandoned it by filing his bill on the equity side of the court and asking that the bankruptcy case be consolidated into it. If the consent of the bankruptcy court were necessary it was sufficiently given in ordering that the referee's proceedings be considered those of a master in equity, and consolidating the bankruptcy case to that extent with the equity case. It is no unusual thing for a bankruptcy court, though having paramount jurisdiction, to send its trustee to sue or permit him to be sued in other courts. There is the less chance of conflict and embarrassment when there are involved only the bankruptcy and the equity sides of the same court, the same judge presiding in each. There was no unlawful abdication of jurisdiction; and this debtor is in no position to complain of it, for he invited it. The equity case was, under the order of partial consolidation, not in opposition to the bankruptcy case, but ancillary to it. The adjudication in that order of the costs of the bankruptcy case against Armstrong indicates that the judge intended thereby to close the bankruptcy case, its function having been fully discharged. The formal dismissal entered in 1939 might well have been entered in 1936. In that view Sect. 74, sub. g, about filing claims could have no application, since the proceeding was ended. Alliance Trust Company was indeed not filing a claim therein, but Armstrong was making a claim against it. But if the consolidation be viewed as carrying the bankruptcy into the equity cause, so that this provision of § 74, sub. g, was somehow involved, the failure to urge it waived it. All issues that ought to have been raised, whether of law or fact, touching the question of usury in the debt are concluded and cannot be litigated again. The Court had ample jurisdiction. In addition to the pleaded connection of the equity case with the bankruptcy case, there was independent federal jurisdiction in that Armstrong as a citizen of Texas was suing a foreign corporation and two citizens of Mississippi for more than $3,000. 28 U.S.C.A. § 41(1). The foreign corporation is to be considered as a foreign citizen. Shattuck v. North British & Mercantile Ins. Co., 8 Cir., 58 F. 609; Pelzer Mfg. Co. v. Hamburg-Bremen Fire Ins. Co., C.C., 62 F. 1; Purcell v. British Land & Mortgage Co., C.C., 42 F. 465; Terry v. Imperial Fire Ins. Co., Fed.Cas. No. 13,838. The Supreme Court of Mississippi held the matter of usury to be res judicata. We are of that opinion too.

We may observe that the exposition of the usury laws of Texas, followed by this court in Atwood v. Deming Investment Co., 5 Cir., 55 F.2d 180, has since been consid-

erably modified by the Supreme Court of that State. See Cole v. Franklin Life Ins. Co., 5 Cir., 108 F.2d 130, and cases cited. It is not unlikely that the loan here in controversy would now be held to be free of usury under the Texas law.

Affirmed.