**In re GOOD HOPE INDUSTRIES,
INC., Debtor.**

**GOOD HOPE INDUSTRIES, INC.,
Plaintiff-in-counterclaim,**

v.

**CONNECTICUT TRANSPORT, INC.,
Defendant-in-counterclaim.**

**Bankruptcy No. 75–2740–G.**

United States Bankruptcy Court,
D. Massachusetts.

Jan. 18, 1982.

**720**

Stephen F. Gordon, Widett, Slater & Goldman, P.C., Boston, Mass., for plaintiff.

Walter H. Hinton, III, Burlingham, Underwood & Lord, New York City, for defendant.

MEMORANDUM AND ORDER ON PROOF OF CLAIM, OBJECTION THERETO, AND DEBTOR'S COUNTERCLAIM

PAUL W. GLENNON, Bankruptcy Judge.

The facts pertinent to this decision are not substantially in dispute. Good Hope Industries, Inc. ("Good Hope") was in the business of marketing petroleum products. It, along with four companion debtors, filed for relief under Chapter XI of the Bankruptcy Act [1] on October 31, 1975. Prior to confirmation of its plan of arrangement in May, 1980, Good Hope filed with the court its objections to claims against the estate. That document was filed on April 17, 1980, and included an objection to the claim of Connecticut Transport, Inc. ("CTI"). CTI had duly filed a proof of claim on December 15, 1975 in the Chapter XI proceeding alleging that it was owed $36,553.31 pursuant to the decision and award of an arbitration panel. By agreement (known as a voyage charter party) dated February 21, 1975, Good Hope chartered a tanker owned by CTI for the transport of petroleum between ports. Clause 24 of that agreement provided that any and all disputes arising under the agreement shall be put to arbitration. CTI sought and obtained an arbitration award in the amount of $36,553.31, which arose from a dispute under the contract. The award was made October 17, 1975, 14 days prior to the filing of the Chapter XI petition. CTI's proof of claim is based solely upon the arbitrators' award.

Four and one-half years later, on April 17, 1981 and just prior to confirmation of its plan, Good Hope filed its objection to CTI's proof of claim, and stated:

The Debtor objects to this claim for the reason that its books and records reflect no obligation being due to claimant. The Debtor will approve the claim for whatever amount the claimant can substantiate.

CTI alleges and the record supports the fact that it was not served with a copy of Good Hope's objection to its claim until April 1, 1981. Furthermore, CTI did not receive that objection until it first made application on January 16, 1981 for allowance of its claim and for payment thereon, pursuant to the confirmed plan of arrangement. As a result of that application, the matter was scheduled for hearing April 2, 1981. One day prior to that hearing, Good Hope served a copy of its objection to the claim, and asserted for the first time, a counterclaim for losses incurred during the transport of its oil by CTI. On April 23, 1981, CTI filed a petition to stay the trial of Good Hope's counterclaim in order that the dispute could be settled by arbitration, as provided by the contract. Good Hope has argued that it is not compelled to submit its counterclaim to arbitration and that this Court has jurisdiction of that counterclaim in the first instance by virtue of its jurisdiction of the claim of CTI. The matter was argued orally and submitted on briefs.

### DISCUSSION

■ Under the Bankruptcy Act, a proof of claim filed in accordance with the re-

---

1. 11 U.S.C. §§ 701–799, prior to repeal by the Bankruptcy Reform Act of 1978 (P.L. 95–598). Pursuant to § 403 of the Reform Act, the pre-existing bankruptcy Act remains applicable to cases filed prior to October 1, 1979. Therefore, all references to Title 11 of the United States Code are to Sections as they existed prior to their repeal.

quirements of the Act constitutes *prima facie* evidence of the validity and amount of the claim. Bankruptcy Act § 57(a) (11 U.S.C. § 93); Bankruptcy Rules 11–33(a) and 301; *Whitney v. Dresser*, 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584 (1906); *Gardner v. New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947). It is the objection, and not the claim, which is pointed out for hearing and determination. *Whitney v. Dresser*, supra 200 U.S. at 535, 26 S.Ct. at 317; Bankruptcy Act § 57(f) (11 U.S.C. § 93). Ordinarily, objections to the allowance of a claim may be made at any time prior to the allowance of the claim. *In re Cushman Bakery*, 526 F.2d 23 (1st Cir. 1975). However, the law is well-settled that where the proof of claim complies in all respects with the provisions of section 57 of the Act, its validity is prima facie established, and is sufficient to overcome unsupported formal objections. *Matter of Noble*, 15 F.Supp. 648 (N.D.N.Y.1936). If objections are made to the allowance of a claim, the formal proof of it raises a presumption as to its validity which must be rebutted by affirmative proof. See generally 3 *Collier on Bankruptcy* ¶ 57.13, n.5 and ¶ 57.18[5] (14th Ed. 1978). "The burden of proof is always on the claimant, but, as probative force is given to the allegations of the proofs of claim, and no probative force is given to the objections, [the claim] must be met, overcome, or at least equalized, by the objecting party." *In re Castle Braid Co.*, 145 F. 224, 228 (S.D.N.Y.1906).

■ In the case at bar, CTI filed a written proof of claim, signed by its Senior Vice President, setting forth the amount of the claim, the consideration for it, credit for any and all payments made on the claim, and stating that the claim was due and owing on the date the Chapter 11 petition was filed. Affixed to the proof of claim is a copy of the "Decision and Award" of the Arbitration Panel, setting forth CTI's claim, the facts under which it arose, an itemization of the actual award, and the signatures of all Panel members. Attached, as well, were copies of the actual charter party, correspondence from CTI to Good Hope about the arbitration hearing, and a copy of the stenographic record before the arbitration panel. On these facts, I find that CTI has more than adequately complied with the provisions of § 57 of the Act and Bankruptcy Rule 302 dealing with the proper method of filing a proof of claim. As such, its claim is entitled to the presumption of validity required by the Bankruptcy Act and Rules.

The Court also finds that Good Hope's original objection to the claim on April 17, 1980 stated no affirmative allegation to rebut the proof thereof. Good Hope's statement that its records reflected no such debt was impertinent in view of the nature of the claim and the documentation attached to it. Although Good Hope did not admit liability in its statement, it did assert that it would pay the claim upon presentation of the proper documentation. The court finds that there was sufficient documentation of the claim at the time of objection as to make the objection, on its face, a frivolous one. It must be noted that Good Hope failed to allege any claim of offset against CTI's proof that may have arisen out of the original transaction. It was only one year later, and one day prior to a hearing on the allowance of the claim, that Good Hope made formal service of its objection upon CTI, and also claimed for the first time a right to set-off a debt alleged to be owing from CTI to Good Hope. This type of practice creates skepticism in the mind of the Court as to Good Hope's real motives in this matter and the good faith of its claim, but I nevertheless feel obligated to address the merits of its argument.

Good Hope filed its original petition more than six years ago. By invoking the protection of this Court, Good Hope was afforded an opportunity to organize its business affairs. This Court has at all times been patient with the debtor's efforts to rehabilitate itself for the reasons that it saw a real possibility for rehabilitation of this company and that it seemed likely that a substantial dividend would eventually accrue to creditors. The Court's judgment was borne out when, after 4½ years, the Court confirmed a plan of arrangement which provid-

ed for full payment of all debts to Good Hope's creditors, as well as the substantial likelihood that this company would continue successful operations in the future.

Nevertheless, unsecured creditors, including CTI, were compelled to wait 4½ years before any dividends on their claims were paid. CTI has been forced to wait an additional two years by reason of an objection to its claim by the debtor which, on its face, had no merit. Only when allowance of the claim was imminent did Good Hope interpose its claim for set-off in the amount of $34,870.67.

 It is true that, under the Act and the Rules, an objection or counterclaim to a creditor's proof may be made any time prior to the allowance of the claim. Therefore, it is incumbent upon the Court to rule on CTI's request that the counterclaim proceed in an alternative forum, since the Court cannot say that Good Hope's counterclaim is either procedurally deficient or not timely filed. However, the Court has reviewed both briefs, and particularly the citations of the debtor, and is of the opinion that the question of CTI's liability to Good Hope is better left to proceedings before an arbitration panel because of the special competency of such a panel to decide these kinds of questions, and because it is the forum chosen by parties to decide these kinds of questions.

At the outset, it should be noted that Good Hope's claim against CTI is not one over which this court would ordinarily have jurisdiction. Bankruptcy Act § 23(b) (11 U.S.C. § 46(b)). To the extent that there is any jurisdiction of Good Hope's claim in this instance it is because it arises as a compulsory counterclaim to that of CTI, over which claim this Court does have exclusive jurisdiction. Bankruptcy Act of § 2(a)(2) and (7) [11 U.S.C. § 11(a)(2) and (7)]. Moreover, while Good Hope's counterclaim remains undecided, the Court ordinarily would not proceed to allow CTI's claim,

despite its merit, since the latter claim would be subject to set-off in the event Good Hope were to succeed on the merits of its claim. Bankruptcy Act § 68 (11 U.S.C. § 108). However, all of this discussion presumes the existence of jurisdiction in the Court over Good Hope's counterclaim. Without deciding that question, I am of the opinion that upon the facts presented in this case there is sufficient basis for the Court, in the exercise of its sound judicial discretion, to abstain from hearing Good Hope's cause of action and, instead, to permit Good Hope to proceed with its action in whatever alternative forum it may deem appropriate.

 While Good Hope has cited numerous cases for the proposition that it cannot be compelled to arbitrate its claim, the facts in this case are distinguishable. We are not concerned with a creditor seeking arbitration of its claim outside the bankruptcy court,[2] but with whether Good Hope's counterclaim should be properly heard elsewhere. CTI may not compel Good Hope to arbitrate its claim and, for that matter, neither can this Court. But to the extent such a claim exists, and to the extent that Good Hope wishes to pursue it, this Court has the discretion to consent to outside adjudication of issues otherwise properly adjudicable by it. *Poinsett Lumber & Manufacturing Co. v. Drainage District No. 7*, 119 F.2d 270 (8th Cir. 1941); *National Automatic Tool v. Goldie*, 27 F.Supp. 399 (D.Minn. 1939); see generally, *Matter of Baldwin*, 291 U.S. 610, 54 S.Ct. 551, 78 L.Ed. 1020 (1934); 1 *Collier on Bankruptcy* ¶ 2.07 (14th Ed. 1978). There can be no dispute that a bankruptcy court has discretion to permit the determination of specific matters or issues by non-bankruptcy courts or tribunals. *Mangus v. Miller*, 317 U.S. 178, 63 S.Ct. 182, 87 L.Ed. 189 (1942); *Armstrong v. Alliance Trust Co., Ltd.*, 112 F.2d 114 (5th Cir. 1940); *Sherman v. Buckley*, 119 F.2d 280 (2d Cir. 1941), cert. den. 314 U.S. 657, 62 S.Ct. 110, 86 L.Ed. 527 (1941).

2. CTI's arbitration award came prior to the filing and is therefore binding upon this court. I am not forced, in this instance, to decide the merits of offsetting claims, since CTI's has oth-

erwise been proven, but rather, I am solely concerned now with the merits of Good Hope's counterclaim.

In the case before me, CTI caused an arbitration panel to be convened in October, 1975 and prior to the filing of Good Hope's Chapter XI petition. Good Hope had the opportunity at that time to not only appear and defend CTI's claim, but to present claims of its own. It chose to neither appear nor defend. It may be that such failure to appear or to assert defenses and counterclaims at that time would be a bar to such an assertion in future proceedings and, if that be so, Good Hope should likewise be barred here. If it is not, it is this Court's decision that no more of its time should be wasted on claims by the debtor which, even if meritorious, affect no other parties except the two before the Court. A recovery by the debtor would have no appreciable impact or effect upon the interests of all other creditors. The debtor's plan of arrangement was confirmed almost two years ago, the debtor has continued to operate its business since that time, and it has not been argued or shown that the outcome of this dispute will in any way jeopardize the payment of dividends to all remaining creditors under the plan. Where the claims of the other creditors will not be affected by the decision of an arbitration board, the court may permit a claim to be determined there. *In re F & T Contractors, Inc.*, 649 F.2d 1229 (6th Cir. 1981); *In re Huff*, 1 B.R. 354 (Bkrtcy.D.Utah 1979).

More importantly, however, where the debtor's claim arose and a hearing thereon was convened prior to the filing of a Chapter XI petition, and the debtor, having failed to appear, defend or assert counterclaims at that hearing, first alleges its claim 5½ years after the Chapter XI filing date, and almost 1 year after confirmation of its plan, without having made any reference to its counterclaim in its original objection to the creditor's proof of claim, this Court will abstain from deciding the debtor's counterclaim, whatever jurisdiction it might have over that counterclaim. The debtor should be left to proceed on its counterclaim in a plenary fashion in accordance with § 23(b) of the Bankruptcy Act.

Finally, while it is generally the rule that a bankruptcy court should not allow a claim without first giving the objector the opportunity to be heard on its objection, *Moore v. Crandall*, 205 F. 689 (9th Cir. 1913), Bankruptcy Rule 306(c), the only "objection" in this case which may have any merit is the counterclaim of Good Hope, which I have already decided should be heard by some other forum than the bankruptcy court. In view of the fact that the pursuit of that plenary action will be totally within the control and discretion of Good Hope, and in light of the long delay already absorbed by CTI on its otherwise valid claim, I feel that equity demands that CTI's claim be allowed. in full and that any right of set-off by the debtor be delayed until it can obtain a judgment in another court. Thus, the debtor will be ordered to pay to CTI forthwith the total of all unpaid dividends under the plan of arrangement from May 9, 1980 to the present date and to make all future dividend payments on CTI's allowed claim in accordance with the plan of arrangement until further order of this Court. When and if Good Hope recovers a judgment against CTI, this court will entertain a request by the debtor to set-off its claim against any remaining unpaid balance to CTI. An order shall enter in accordance with this memorandum.