**In re HEMPHILL BUS SALES, INC., Debtor.**

No. 00–43503–S.

United States Bankruptcy Court, E.D. Texas, Sherman Division.

March 22, 2001.

Marc W. Taubenfeld, McGuire, Craddock, Strother & Hale, Dallas, TX, for debtor.

Frank L. Broyles, Goins, Underkofler, Crawford & Langdon, LLP, Dallas, TX, Ed Wasmuth, Smith Gambrell & Russell,

Atlanta, GA, for Blue Bird Body Company, Inc.

## MEMORANDUM OPINION

DONALD R. SHARP, Bankruptcy Judge.

NOW before the Court is the Motion For Relief From The Automatic Stay Against Distribution Agreement filed by Blue Bird Body Company, Inc. ( "Blue Bird"). The Court considered the pleadings filed, the arguments of counsel and the evidence adduced. This opinion constitutes the Court's findings of fact and conclusions of law required by Fed.R.Bankr. Proc. 7052 and disposes of all issues before the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Hemphill Bus Sales, Inc. ("the Debtor") filed a voluntary petition under Ch. 11 on November 16, 2000. The Debtor, formerly known as Bridges Hemphill Enterprises, Inc., is licensed by the Texas Motor Vehicle Commission to sell and distribute school buses in the State of Texas and has done so for approximately a decade. Blue Bird Body Company, Inc., the Movant in this contested matter, manufactures buses. It has supplied the Debtor approximately 90% of the buses the Debtor has distributed over the last decade. Blue Bird continues to supply the Debtor with buses for distribution. Like the Debtor, Blue Bird is licensed by the Texas Motor Vehicle Commission. The subject of this contested matter is the Distribution Contract granting Debtor a non-exclusive right to sell Blue Bird school buses entered into in September, 1993.[1] The Distribution Contract includes the following clause:

> Except for disputes regarding the non-payment of any amount due hereunder to Blue Bird or any of its affiliates,

all disputes and claims relating to any provision hereof or relating to or arising out of the parties' relationship or creation or termination thereof (including, without limitation, any claim that any provision of this Contract, any specification, standard or operating procedure or any other obligation of Distributor or Blue Bird is illegal or otherwise unenforceable or voidable under any law, ordinance, or ruling) shall be settled by arbitration at the office of the American Arbitration Association in Atlanta, Georgia, in accordance with the United States Arbitration Act (9 U.S.C. § 1 *et seq.*) and the Rules of the American Arbitration Association. Suits to compel arbitration shall be binding and non-appealable except as otherwise provided in the United States Arbitration Act. Judgment upon the award of the arbitrator may be entered in any court having jurisdiction.

(hereinafter, "the Arbitration Clause").

By correspondence dated February 24, 2000, Blue Bird notified the Debtor that it was terminating its school bus contract with Hemphill Bus Sales, effective April 26, 2000. Blue Bird further advised the Debtor: "... you may be entitled to file a protest with the Texas Motor Vehicle Board in Austin, Texas, and have a hearing in which you may protest the proposed termination or non-continuance of your franchise under the terms of the Texas Motor Vehicle Commission Code if you oppose this action." In response, the Debtor filed a protest under the provisions of the Texas Motor Vehicle Code with the Texas Motor Vehicle Commission (the "Commission") styled *Hemphill Bus Sales, Inc. v. Blue Bird Body Company* (the "TMVC Case") thus opening the question of whether the termination was effective or stayed. In turn, Blue Bird filed two lawsuits: one in the Federal District Court in

---

**1.** The Distribution Contract was amended subsequently with respect to the Debtor's change in name and the division of the distribution territory. Initially, the Debtor's territory encompassed all of Texas. After 1997, Blue Bird reduced the Debtor's Texas territory first by half and, then, by dividing it into approximately one third of the original territory.

Georgia to compel arbitration and another against the executive director of the Commission in the U.S. District Court for the Western District of Texas contending that any action before the Commission was preempted by the Federal Arbitration Act and the terms of the Distribution Contract. The District Court in Texas entered an Order enjoining the Texas Department of Transportation Motor Vehicle Board from proceeding in the protest filed by the Debtor. In August, 2000, the Federal District Court of Georgia ordered the Debtor to arbitrate its dispute with Blue Bird and enjoined the Debtor from 'prosecuting, pursuing or maintaining any proceeding against Blue Bird (other than arbitration under the Distribution Contract) relating to that contract or arising out of the parties' relationship or the termination thereof, including [the TMVC Case]'.

Thereafter, the Debtor initiated this case by filing its voluntary petition for relief under Chapter 11 of Title 11. Blue Bird filed the Motion for Relief From the Automatic Stay Against Distribution Agreement ("Motion") now before this Court to permit Blue Bird to proceed to arbitration of whether the Distribution Contract had been terminated and, if found so, as of when. The Debtor filed a Response objecting to the relief sought and the matter came on for hearing. At the conclusion of the hearing, the parties were allowed a period for filing briefs after which the matter was taken under advisement.

28 U.S.C. § 1334(b) confers on the federal district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising under or related to cases under title 11". 28 U.S.C. § 1334(b). 28 U.S.C. § 157(b)(1) gives bankruptcy judges the power to hear and determine "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11". 28 U.S.C. § 157(b)(1).

## DISCUSSION

■ Blue Bird requests relief from the automatic stay under 11 U.S.C. § 362(d) "for cause". This Court must reconcile two apparently conflicting, but important Federal statutes: the Federal Arbitration Act and the Bankruptcy Code. Numerous courts, including this Court, have examined this issue.[2,3] A bankruptcy court retains significant discretion to assess whether arbitration would be consistent with the purpose of the Bankruptcy Code, including the goal of centralized resolution of purely bankruptcy issues and the need to protect creditors and reorganizing debtors from piecemeal litigation. *See Zimmerman v. Continental Airlines, Inc.,* 712 F.2d 55 (3rd Cir.1983), *cert. denied,* 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165

**2.** Inter alia, *Zimmerman v. Continental Airlines,* 712 F.2d 55 (3rd Cir.1983) *cert. denied,* 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984); *In re Muskegon Motor Specialties Co.,* 313 F.2d 841 (6th Cir.1963); *Johnson v. England,* 356 F.2d 44 (9th Cir.1966); *In re Mor-Ben Insurance Markets Corp.,* 73 B.R. 644 (9th Cir. BAP 1987); *Bender Shipbldg. & Repair Co., Inc. v. H.B. Morgan, Jr. (In re Morgan),* 28 B.R. 3 (9th Cir. BAP 1983); *Societe Nationale Algerienne v. Distrigas Corp.,* 80 B.R. 606, 18 C.B.C.2d 865 (D.Mass.1987); *Double TRL, Inc. v. F.S. Leasing, Inc. (In re Double TRL, Inc.),* 65 B.R. 993 (Bkrtcy.E.D.N.Y.1986); *Braniff Airways, Inc. v. United Air Lines, Inc. (In re Braniff Airways, Inc.),* 33 B.R. 33 (Bkrtcy.N.D.Tex.1983); *In re Guild Music Corp.,* 100 B.R. 624 (Bkrtcy.D.R.I.1989) *Good Hope Industries, Inc. v. Connecticut Transport, Inc. (In re Good Hope Industries),* 16 B.R. 719 (Bkrtcy.D.Mass.1982) and *In re Bailey,* 217 B.R. 523, 526 (Bkrtcy.E.D.Tex.1997).

**3.** The District Court for the District of Massachusetts, wrestling with the identical issue of reconciling the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA") and its mandate of enforcing contractual provisions and the Bankruptcy Code, 11 U.S.C. 101 *et seq.,* with its well defined policy goals, aptly summarized the problem facing this Court: "[r]eaching a satisfactory reconciliation between the two is no simple matter especially when each statute advances clear and unassailable legislative policies and comes well-armed with strong judicial approval." *Societe Nationale Algerienne v. Distrigas Corp.,* 80 B.R. 606, 18 C.B.C.2d 865, 870 (D.Mass.1987).

(1984); *In re Bailey,* 217 B.R. 523, 526 (Bkrtcy.E.D.Tex.1997); *Matter of National Gypsum,* 118 F.3d 1056, 1069 (5th Cir. 1997). Deferral to arbitration is within the court's discretion. Numerous courts have found that the FAA irreconcilably conflicts with the Bankruptcy Code. For example, in *Zimmerman v. Continental Airlines, Inc.,* 712 F.2d 55, 59 (3d Cir.1983), *cert. denied,* 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984), the Third Circuit held that "the intentions of Congress will be better realized if the Bankruptcy Reform Act is read to impliedly modify the [FAA]." Accord, *In re Chas. P. Young Co.,* 111 B.R. 410, 416–418 (Bankr.S.D.N.Y. 1990); *In re Springer–Penguin, Inc.,* 74 B.R. 879, 884 (Bankr.S.D.N.Y.1987). Citing the broad jurisdictional grant in the Bankruptcy Reform Act of 1978, *Zimmerman* held that "the power to stay bankruptcy proceedings pending arbitration ... is left to the sound discretion of the bankruptcy court." *Zimmerman, supra,* 712 F.2d at 59–60. See *Bousa Inc. v. Oy (In re Bousa Inc.),* 1993 WL 78019, *2 (S.D.N.Y.1993) (bankruptcy court has discretion to deny arbitration); *In re Chas. P. Young Co., supra,* 111 B.R. at 417 ("[I]t is within the discretion of the bankruptcy court judge to decide whether or not to compel a debtor to proceed with arbitration proceedings."); *In re Al–Cam Dev. Corp.,* 99 B.R. 573, 578 (Bankr.S.D.N.Y. 1989) (bankruptcy court may exercise discretion to deny enforcement of arbitration clause). *Zimmerman's* application in non-core cases, however, has been limited by [...] decisions in both the Third Circuit and [the Second Circuit]. For example, following *Rodriguez, supra,* and *McMahon, supra,* the Third Circuit retreated from its holding in *Zimmerman* and held that where an adversary proceeding is not core, a district court is without discretion to deny enforcement of an arbitration agreement when the party opposing arbitration has not shown that the text, legislative history, or purpose of the Bankruptcy Code conflicts with arbitration. *Hays & Co. v. Merrill Lynch, Pierce, Fenner &*

*Smith, Inc.,* 885 F.2d 1149, 1157–161 (3d Cir.1989). With few exceptions, bankruptcy courts in the Second Circuit have followed the Hays decision in noncore proceedings. *Non–Ferrous Metals (U.S.A.), Inc. v. Vantage Steel Corp. (In re Vantage Steel Corp.),* 125 B.R. 880, 886 (Bankr. S.D.N.Y.1991); *In re Drexel Burnham Lambert Group, Inc.,* 113 B.R. 830, 838 n. 8 (Bankr.S.D.N.Y.1990). See generally *Neufeld, Enforcement of Contractual Arbitration Agreements under the Bankruptcy Code,* 65 Am.Bankr.L.J. 525 (1991). Hays does not hold similar sway in core proceedings. Several courts have held that upon a showing that arbitration would disrupt the many policies expressed in the Bankruptcy Code, a bankruptcy judge may exercise his or her sound discretion to determine whether arbitration agreements should be enforced in core proceedings. See, e.g., *In re Chorus Data Systems, Inc.,* 122 B.R. 845, 851 n. 6 (Bankr.D.N.H.1990) (noting that Hays applies only to noncore proceedings); *In re FRG,* 115 B.R. 72, 75 (E.D.Pa. 1990) (advocating case-by-case balancing of hardships in core proceedings). See also *American Freight Sys., Inc. v. Consumer Prods. Assocs. (In re American Freight Sys., Inc.),* 164 B.R. 341, 347 (D.Kan.1994) (agreeing with FRG); *After Six, Inc. v. Corestates Bank, N.A. (In re After Six, Inc.),* 1993 WL 224737 at 3 (Bankr.E.D.Pa. 1993), *aff'd sub nom. After Six, Inc. v. Abraham Zion Corp.,* 1994 WL 125219 (E.D.Pa.1994) (holding deferral to arbitration within court's discretion in core and noncore proceedings). *In re U.S. Lines, Inc.,* 169 B.R. 804, 824 (Bkrtcy.S.D.N.Y. 1994).

■ *Matter of National Gypsum,* 118 F.3d 1056, 1069 (5th Cir.1997) set the standard in the Fifth Circuit for determining whether to enforce an arbitration provision. First, the Court must determine whether the proceeding "derives exclusively from the provisions of the Bankruptcy Code". *Id.* at 1067. Then, the Court must determine "whether arbitration of the proceeding would conflict with the purposes of the Code." *Id.* See also *Trefny v. Bear*

*Stearns Securities Corp.*, 243 B.R. 300, 323 (S.D.Tex.1999).[4] The law is settled that in order for a bankruptcy court to have discretion in refusing to enforce an arbitration provision there must be a demonstrated specific conflict between enforcing an arbitration clause and the textual provisions and/or purpose of the Code. *In re Bailey*, 217 B.R. 523 (Bkrtcy.E.D.Tex. 1997)[5,6]. Does the underlying nature of the proceeding at bar derive exclusively under the provisions of the Bankruptcy Code and would enforcing arbitration of the Distribution Contract dispute conflict with the purposes of the Code? This Court answers both questions affirmatively.

### The Underlying Nature of the Proceeding

Blue Bird frames the matter before this Court as merely one of state contract law and the Texas Motor Vehicle Code. Blue Bird then concludes that because the matter is one involving state law, the Federal Arbitration Act must preempt the state law in this dispute. Blue Bird relies upon

the Texas and Georgia District Courts' previous rulings that this Debtor was required to arbitrate its dispute with Blue Bird rather than submit such dispute to the Texas Motor Vehicle Board. Absent ensuing events, this Court would agree. However, when the Texas and Georgia courts ruled, the Debtor had not yet filed its voluntary petition for relief under the Bankruptcy Code invoking competing Federal law to the Federal Arbitration Act.

By filing its voluntary petition, the Debtor created an entirely altered legal landscape to that considered by the Texas and Georgia courts (in addition to providing another potential forum for resolution of the dispute).[7] As of the commencement of this bankruptcy case, all of the Debtor's interest in the Distribution Contract vested in the bankruptcy estate. Further, the filing of the voluntary petition introduced the interests of additional parties to the dispute: those of the creditors of the bankruptcy estate. Additionally, the filing of the petition invokes public policy—the restructuring of Hemphill's debtor—creditor relations and the restructuring of its credi-

**4.** See also *In re Chorus Data Systems*, 122 B.R. 845, 851 (Bkrtcy.D.N.H.1990) citing to *Wm. S. Newman Brewing Co., Inc. v. C. Schmidt and Sons, Inc.*, 115 B.R. 25 (N.D.N.Y.1990); *In re FRG*, 115 B.R. 72 (E.D.Pa.1990); *In re Chas. P. Young Co.*, 111 B.R. 410 (Bankr.S.D.N.Y.1990); *Allegaert v. Perot*, 548 F.2d 432 (2d Cir.1977).

**5.** In *Bailey*, the Chapter 13 debtor initiated an adversary proceeding to recover for his exemployer's alleged breach of a pre-petition employment agreement. The ex-employer moved to dismiss, to abstain and to compel arbitration. This Court found that, as to the dispute between Bailey and his ex-employer, there was no showing of any conflict and the Court believed the claim to be based on a pre-petition legal right not derived from any federal right conferred by the Bankruptcy Code. Accordingly, this Court granted the ex-employer's motion and dismissed the adversary.

**6.** The pertinent legislative history with regard to the Federal Arbitration Act is well-summarized in *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–20, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985), as follows:

The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate. We therefore reject the suggestion that the overriding goal of the Arbitration Act was to promote the expeditious resolution of claims. The Act, after all, does not mandate the arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements. The House Report accompanying the Act makes clear that its purpose was to place an arbitration agreement "upon the same footing as other contracts, where it belongs," H.R.Rep. No. 96, 68th Cong., 1st Sess., 1 (1924), and to override the judiciary's longstanding refusal to enforce agreements to arbitrate.

*In re Chorus Data Systems, Inc.*, 122 B.R. 845, 850 (Bkrtcy.D.N.H.1990).

**7.** "The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of ... (1) ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

tors' respective relations. *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982) ["the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a "public right," but the latter obviously is not".] Blue Bird underestimates the importance of the aforementioned factors and apprises this Court: "The alleged importance of the Blue Bird Distribution Contract to the Debtor and its creditors are *[SIC]* irrelevant considerations under *National Gypsum.*" *Blue Bird's Brief In Reply To Brief Filed By Debtor In Opposition To Motion For Relief From Automatic Stay, p.* 7. Contrary to Blue Bird's position: the interest of the creditors of this estate is quite relevant here and consistent with the *National Gypsum* holding. The interest of the creditors of this estate in the outcome of this dispute is a legal interest which, given that the determination of the dispute directly affects the Debtor's ability to reorganize, overrides either Blue Bird's or the Debtor's individual rights under the arbitration clause.[8] *See U.S. Lines, Inc. v. American S.S. Owners Mut. Protection Indem. Ass'n.*, 169 B.R. 804, 814 (Bkrtcy. S.D.N.Y.1994). *Cf. In re Bailey, supra* at 526.

The filing of the petition vested certain statutory rights in the debtor-in-possession. Under 11 U.S.C. § 365(a), a trustee or a debtor-in-possession under 11 U.S.C. § 1107 may assume or reject any executory contract of the debtor. Whether the

letter of February 24, 2000, terminated the Distribution Contract affects a determination of whether it was executory as of the date of the filing of the petition. Both parties testified that they have continued to perform under the Distribution Contract throughout the dispute and these proceedings. (The Distribution Contract contains a wind-down provision.) A determination as to whether the Distribution Contract was terminated and, ultimately, whether it may be assumed or rejected under 11 U.S.C. § 365 for the benefit of the estate, involves a substantive right peculiar to the bankruptcy context which can neither be abrogated nor ignored. In this specific case, according to unrefuted testimony at the hearing, the resolution is integral to the Debtor's successful reorganization.[9] Thus, the underlying nature of the dispute is not limited to a mere "contractual dispute and a dispute involving alleged rights under the Texas Motor Vehicle Code" as Blue Bird has characterized it. Rather, it is a matter involving both substantive rights and public policy that do not arise outside of bankruptcy law.

■ Moreover, matters involving rights exclusively derived from the Bankruptcy Code are core proceedings under 28 U.S.C. § 157(b)(2). *See Matter of Wood*, 825 F.2d 90, 97 (5th Cir.1987). Although courts have generally found that the core/non-core issue is "useful" but not dispositive of the arbitration question, still, it is a factor that courts must consider. *See, National Gypsum, Ibid.* at 1066. Blue Bird posits that this matter is non-core insofar as "the dispute at issue in the arbitration proceeding could not involve Hemphill's alleged

---

**8.** Mr. Hemphill testified that financing is in place, cash flow is "O.K." and sales are increasing. No evidence was adduced to contradict his testimony. He further testified that if the Distribution Contract is retroactively terminated, a proposed sale for $1 million pending this Court's approval will be lost. The Court does not accept such opinion as truth, but as an index of the importance to the estate of the fate of the Distribution Contract. Testimony was unrefuted that Blue Bird sup-

plies approximately 90% of the buses sold by the Debtor and that the Distribution Contract is the most significant asset in the Debtor's estate.

**9.** See footnote 9 above regarding evidence supporting the critical importance of the resolution of the Distribution Contract dispute to the successful reorganization of the Debtor.

rights under 11 U.S.C. § 365 because those rights did not exist when Hemphill filed its arbitration demand." The Court finds such reasoning flawed insofar as it too narrowly defines the issue. The Guild Court reviewed numerous cases, including *In re Braniff*, 33 B.R. 33 (Bkrtcy.N.D.Tex. 1983) and concluded: "in matters involving core bankruptcy issues, where the controversy is not of an international nature, and particularly, where the Chapter 11 debtor is likely to be successful in its reorganization, the Bankruptcy Code "impliedly modifies" the Arbitration Act". *In re Guild Music Corp.*, 100 B.R. 624 (Bankr.D.R.I. 1989). This is such a case. The Bankruptcy Court is the most efficient and effective forum in which to determine core Bankruptcy Code issues and this dispute.

This Court concludes that the underlying nature of this dispute goes to the very heart and purpose of the Bankruptcy Code: the expeditious and equitable distribution of the assets of the debtor's estate [10] and the Debtor's opportunity for a fresh start [11]. Here, the disposition of the Distribution Contract is essential to this Debtor's reorganization and to all of the creditors of this estate and it is a core proceeding.[12]

### Conflict With the Purposes of the Bankruptcy Code

There is a demonstrable conflict between enforcing the arbitration clause and the textual provisions and/or purpose of the Code. In *In re Braniff*, 33 B.R. 33 (Bkrtcy.N.D.Tex.1983), certain creditors sought to compel arbitration pursuant to the provisions of agreements between Braniff and its creditors. The *Braniff* Court held that Braniff would not be required to submit to arbitration concluding that "congressional policy overrides the provisions of the Arbitration Act, particularly where, as here the issues will determine which creditors are entitled to share in the debtor's assets and in what priority". *Braniff, Ibid.* at 34 citing to *Allegaert v. Perot*, 548 F.2d 432 (2nd Cir.1977); *Johnson v. England*, 356 F.2d 44 (9th Cir. 1966) *cert. denied*, 384 U.S. 961, 86 S.Ct. 1587, 16 L.Ed.2d 673 (1966) and *In re Muskegon Motor Specialties Co.*, 313 F.2d 841 (6th Cir.1963), *cert. denied, International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, AFL–CIO v. Davis*, 375 U.S. 832, 84 S.Ct. 51, 11 L.Ed.2d 63.[13] In addition, the *Braniff* Court determined that none of the arbitration agreements that were the subject of the airlines' dispute intended that the particular bankruptcy issues presented to the bankruptcy court be arbitrated. Finally, the *Braniff* Court found that from a practical standpoint, arbitration would not be "workable". *Braniff, Ibid.* at 36. By "workable" the *Braniff* Court meant that arbitration would delay the debtor's efforts to reorganize. On the facts before this Court, the Braniff Court's rationale must yield the same result.

As in *Braniff*, the arbitration issue of the Distribution Contract will determine which creditors are entitled to share in the debtor's assets and in what priority. The testimony was undisputed at the hearing that the Hemphill–Blue Bird agreement results in 90% of Hemphill's business and

**10.** *In re Smith–Douglass, Inc.*, 856 F.2d 12, 15 (4th Cir.1988) (citing *Midlantic National Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 508, 106 S.Ct. 755, 763, 88 L.Ed.2d 859 (1986) (Rehnquist, J., dissenting)).

**11.** In the *Matter of Sun Country Development, Inc.*, 764 F.2d 406, 408 (5th Cir.1985).

**12.** Blue Bird has urged this Court to consider the matter with respect to this Court's ruling in *In re Bailey, supra.* The facts are particularly distinguishable because in *Bailey*, resolution of the pre-petition employment contract would have no meaningful impact upon the creditors of the estate.

**13.** "Congressional policy" refers to Congress' enactment of the Bankruptcy Code in 1978 creating a "comprehensive framework to deal with the specialized area of bankruptcy problems, intending to centralize all disputes concerning such matters in the Bankruptcy Court". *Braniff, supra* at 34.

that without the Distribution Contract, the estate is eviscerated and reorganization would be impossible. Thus, in *Braniff's* reorganization as in this Debtor's: "Resolution of the issues, for which arbitration has been requested, is absolutely essential to [Debtor's] successful completion of its reorganization." *Braniff, Ibid.* at 36. Disposition of such a significant asset is too critical to be relegated to a non-judicial body unlikely to have bankruptcy expertise if it happens fortuitously to possess some legal expertise. *Cf. In re Chorus Data Systems,* 122 B.R. 845, 851 (Bkrtcy.D.N.H. 1990) [14] Moreover, determinations respecting such an asset are of too great an importance to the creditors of this estate to be conducted absent representation of those creditors' interests. The creditors of this estate whose interests are paramount in the bankruptcy court are not parties to the Distribution Contract or the arbitration clause. The *Allegaert* court ruled that the Arbitration Act mandates only enforcement of arbitration between parties to an arbitration agreement. *Allegaert, supra,* 548 F.2d at 436. See also *In re Continental Airlines, Corp.,* 64 B.R. 865, 870 (Bkrtcy.S.D.Tex.1986) "since '[p]rotection of general creditors is a major function of ... bankruptcy proceedings,' [cite omitted here] submission of the union claims to arbitration would be particularly unsound because Continental's creditors have not consented to arbitration and would have no right to participate in the arbitration process. Citing to *In re F & T Contractors, Inc.,* 649 F.2d 1229, 1233, n. 1 (6th Cir. 1981)." This Court strongly agrees with the *Continental* Court that the bankruptcy court is better equipped than an arbitra-

tion panel to take cognizance of the interests, in a reorganization, of both the debtor and the creditors. *Continental, supra* at 870.

Secondarily, as in *Braniff,* the Distribution Contract and arbitration clause did not contemplate bankruptcy or the application of such clause to peculiarly bankruptcy issues, although it addressed termination disputes and an option to terminate upon insolvency of Blue Bird.

Finally, as in *Braniff,* although the parties disagree to the extent of the delay that would result from sending this matter to arbitration, testimony at this trial was unrefuted that no arbitrator or arbitration panel has yet been selected and no discovery has taken place. The arbitration is not at its conclusion, it is not at its apex, it has not even begun.[15] See also, *Matter of National Gypsum Co., supra* at 1056 [affirming Bankruptcy Court's ruling denying arbitration, *inter alia,* in the absence of an ongoing arbitration proceeding].

This Court must find that enforcement of the arbitration clause in the Distribution Contract inherently conflicts with the underlying purposes of the Bankruptcy Code where the purpose of the Code is to give the debtor and his creditor body a full, fair, speedy, and unhampered chance for reorganization including determination of the priority in which this Debtor's creditors will be entitled to share in the Debtor's assets.

### CONCLUSION

For the aforementioned reasons, the Motion For Relief From Automatic Stay

---

**14.** In *In re Chorus Data Systems,* 122 B.R. 845, 851 (Bkrtcy.D.N.H.1990) the court granted relief from the automatic stay to arbitrate an unliquidated product development agreement claim and counterclaim where the Chapter 11 debtor's reorganization plan was not wholly contingent on the outcome and resolution involved only state law contract issues.

**15.** In the bankruptcy context *efficient* resolution of claims and conservation of the bank-

ruptcy estate assets are integral purposes of the Bankruptcy Code; thus delay becomes another meaningful [but not dispositive] factor. Costs and delay represent legitimate [but not overriding] considerations. *National Gypsum* at 1069, n. 21. But, *Cf. In re Day,* 208 B.R. 358, 370 (Bankr.E.D.Pa.1997) and *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217, 105 S.Ct. 1238, 1240, 84 L.Ed.2d 158 (1985).

Against Distribution Agreement must be denied. An order will be entered accordingly.